837 F.2d 1091
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles FREESE, Individually and as Next Friend of Heidi
Freese, Plaintiff-Appellant,
v.
CORNING GLASS WORKS, Defendant-Appellee.
 No. 86-1933.
 United States Court of Appeals, Sixth Circuit.
 Jan. 28, 1988.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an action in which the plaintiffs have alleged that the defendant was guilty of misconduct in connection with discovery proceedings in a prior lawsuit. The district court dismissed the complaint in the instant case, applying the doctrine of res judicata, and awarded attorney fees to the defendant under Rule 11 of the Federal Rules of Civil Procedure. We agree that the present action is barred by the doctrine of res judicata, but we shall reverse the award of attorney fees because we are not satisfied that the plaintiffs' position in the second action was unwarranted by a good faith argument for the extension, modification or reversal of existing law.
 
 I.
 
 2
 On January 11, 1980, Heidi Freese, a minor, was injured when the botton fell out of a pyrex carafe, spilling hot liquid on her. Heidi and her father promptly sued defendant Corning Glass Works, a manufacturer of glassware. The action was brought in federal court on the basis of diversity of citizenship. In the course of discovery in that case the plaintiffs propounded an interrogatory asking Corning how many carafes of the type used by the plaintiffs were made per year. Corning originally refused to answer the interrogatory. When the plaintiffs obtained a court order compelling a response, Corning answered the interrogatory thus:
 
 
 3
 "The number of carafes manufactured per year varied. Shipment figures, which may differ on a yearly basis from manufacturing figures, indicate that the following numbers of carafes were shipped between 1970 and 1978."
 
 
 4
 The answer then went on to list the number of carafes shipped in each year from 1970 to 1978. The total was 855,000.
 
 
 5
 The plaintiffs allegedly prepared their product liability case on the assumption that the carafe in question was one that had been purchased from a local store in 1979. The plaintiffs claim to have been surprised when, at the time of trial, Corning's lawyer told the jury during his opening statement that the carafe was not manufactured after 1971; he suggested that the carafe that broke was not the one purchased in 1979. The evidence presented at trial showed that not since 1972 had Corning manufactured any carafes of the type by which Heidi had been injured.
 
 
 6
 The jury rendered a verdict in favor of Corning, and the plaintiffs moved for a new trial on the basis of surprise. The district court overruled the motion, stating that
 
 
 7
 "[w]ithout approving nondisclosure of alternate defenses in the joint Final Pretrial Statement or at the pretrial conference, the Court believes that no prejudicial surprise resulted to plaintiff. Further, the Court notes that despite plaintiff's claimed surprise and prejudice, the plaintiff failed to move for a continuance at the time of the surprise, or at any time. This failure is generally construed as a waiver of any objection to the allegedly surprising and prejudicial evidence."
 
 
 8
 A judgment entered in favor of defendant Corning was affirmed on appeal.
 
 
 9
 The plaintiffs then instituted the present action, seeking redress for the defendant's alleged misconduct in the original litigation. The complaint contains counts sounding in negligence, intentional misrepresentation and deceit, negligent misrepresentation and deceit, and "outrage."
 
 
 10
 Corning moved for summary judgment in its favor, asserting that: (1) the complaint failed to state a claim upon which relief could be granted; (2) the plaintiffs were estopped from relitigating issues determined in the previous action; and (3) the plaintiffs' claims were barred by the statute of limitations.
 
 
 11
 During a hearing on the summary judgment motion, the following exchange occurred between the court and plaintiffs' counsel:
 
 
 12
 "THE COURT: What you are trying to do is recover the same damages which you lost in the other lawsuit; aren't you?
 
 
 13
 MR. PERRY: I don't think so. I think we are recovering in a previous lawsuit--we are attempting to show that misrepresentation occurred and we were injured thereby. Now--
 
 
 14
 THE COURT: Injured in what? In the loss of your lawsuit?
 
 
 15
 MR. PERRY: No, not in the loss of the lawsuit. The initial injury would have been the loss of the lawsuit, and--yes. But this one, by not being able to property conduct our lawsuit."
 
 
 16
 The district court noted that the plaintiffs could have sought a continuance or sanctions in the previous lawsuit. Plaintiffs' counsel responded that they could not have done so because no objection had been made during the defendant's opening statement. The court then suggested that plaintiffs could sue their previous counsel for negligence or malpractice. Plaintiff's counsel replied that his predecessor used due care, was surprised, and simply did not perceive "a fraudulent issue."* The district court repeatedly observed that the present case involved no facts not known to plaintiffs' counsel in the previous action.
 
 
 17
 In granting defendant's summary judgment motion in a ruling from the bench, the judge explained he was not
 
 
 18
 "making a determination as to whether there was a false statement from the actions and the responses to interrogatories or not.... it's a question that's arguable, at least. But presumably experienced trial counsel, the first thing might very well have discovered this by reading, looking at the answer and reading the answer. And he may have very well found out that the answer was either incomplete or deceptive, perhaps even intentionally deceptive."
 
 
 19
 The court went on to point out the various remedies that had been available to the plaintiffs. Sanctions could have been sought under the discovery rule, for example, and a collateral attack could have been undertaken under Rule 60(b). The court concluded by stating:
 
 
 20
 "And I think the whole thing is absolutely ridiculous. And I do not have a Rule 11 motion, so I am not dealing with this at this time. But the motion for summary judgment is granted with costs.
 
 
 21
 What were your costs in bringing this motion for summary judgment today? What would the clients--
 
 
 22
 MR. BEUSSE: Your Honor, I neglected to calculate that, but it took approximately--I would say nine hours to do the brief work and research work, and then another two and a half each way to drive here.
 
 
 23
 THE COURT: A total of how many hours?
 
 
 24
 MR. BEUSSE: That would be approximately 14 hours, Your Honor.
 
 
 25
 THE COURT: What are your hourly rates, your charges?
 
 
 26
 MR. BEUSSE: The hourly rate for this client is $65 an hour.
 
 
 27
 THE COURT: You say 14 hours?
 
 
 28
 MR. BEUSSE: Yes, Your Honor.
 
 
 29
 THE COURT: I'll award in connection with this motion for summary judgment costs of $1,000.
 
 
 30
 MR. BEUSSE: Thank you, Your Honor.
 
 
 31
 THE COURT: I think this lawsuit is ridiculous. It's ridiculous and I think it is unfair of Mr. Sumpter to send you clear down here. And he must have known that when he started the lawsuit."
 
 
 32
 Plaintiffs filed a motion for reconsideration, which was denied. Plaintiffs have appealed both the grant of summary judgment and the imposition of sanctions.
 
 II
 
 33
 Plaintiffs argue that their second lawsuit did not represent a collateral attack on the judgment entered in the first, but an effort to recover damages for the harm defendant's conduct did to their negotiating stance:
 
 
 34
 "Plaintiff's damages are her [in]ability to conduct negotiations and to consider offers of settlement with the proper facts of the case within her knowledge. Defendant had knowledge of the date of manufacture and wilfully failed to supply Plaintiff-appellant with this information. Therefore, Plaintiff had erroneous and misleading information on which to base her consideration (and subsequent rejection) of Defendant's $18,000 offer of settlement, without all of the true facts within her knowledge."
 
 
 35
 The principle of res judicata, however, applies not only to issues actually raised in the previous case, but also to issues that might have been raised there. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). As the district court pointed out, plaintiffs could have sought sanctions for misconduct in the earlier case. We know of no reason why redress could not have been sought in that action on the basis of prejudice to the plaintiffs' position in the settlement negotiations, if such prejudice occurred and if plaintiffs were of the view that such redress is available under the applicable law.
 
 III
 
 36
 In its order denying plaintiffs' motion for reconsideration, the court stated that sanctions were imposed pursuant to Rule 11. Rule 11 states, in pertinent part,
 
 
 37
 "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass .... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."
 
 
 38
 The notes of the Advisory Committee indicate that the Rule was amended in 1983 to place greater emphasis on combatting frivolous proceedings of the sort that were unfairly burdening litigants and placing great costs upon the legal system and society. On the other hand, the Notes warn,
 
 
 39
 "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."
 
 
 40
 Although the district court judge stated from the bench that the present lawsuit was brought for the "purpose of harassment," the basis for that conclusion was not articulated. Before sanctions may be imposed, "careful analysis and discrete findings are required, no matter how exasperating the case." In re: Ruben, 825 F.2d 977, 991 (6th Cir.1987). No such analysis and findings are evident here, and the district court's conclusion strikes us as clearly erroneous.
 
 
 41
 Neither is it evident on what basis the plaintiffs' lawyer could be found to have signed the complaint in this case without having formed a belief, based on reasonable inquiry, that if the pleading was not warranted by existing law, it was warranted by "a good faith argument for the extension, modification, or reversal of existing law ...." We agree with the district court that the complaint in plaintiffs' second action was not warranted by existing law. We are not persuaded, however, that the plaintiffs could not in good faith argue that the law ought to be otherwise. Similar arguments by litigants seeking to avoid application of the doctrine of res judicata are by no means unknown. See, e.g., Campbell v. City of Allen Park, 829 F.2d 576 (6th Cir.1987). The record in this case does not appear to indicate that the district court addressed the question whether plaintiffs' position was warranted by a good faith argument for the extension, modification, or reversal of existing law, but if the court intended to hold that such an argument is impossible as a matter of law, we are constrained to disagree.
 
 
 42
 The summary judgment in favor of the defendant is AFFIRMED, and the order imposing sanctions under Rule 11 is REVERSED.
 
 
 
 *
 No mention was made of the fact that the lawyer who represented the plaintiffs in the first case is a member of the same firm as the lawyer who represents them here