**Debra CAMPBELL and Dale Campbell, Plaintiffs-Appellants,**

v.

**CITY OF ALLEN PARK and Frank Lada, Defendants-Appellees.**

No. 86–1360.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1987.

Decided Sept. 18, 1987.

---

Michael S. Cafferty (argued), Frimet, Bellamy & Gilchrist, P.C., Detroit, Mich., for plaintiffs-appellants.

John Dise, Craig, Farber, Downs & Dise, Detroit, Mich., Timothy Downs (argued), for defendants-appellees.

Before MARTIN, NELSON and BOGGS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Appellant Debra Campbell lost her job with the City of Allen Park, Michigan, after she moved outside the city in alleged violation of a city charter provision requiring employees to reside within the city unless granted a specific exemption from that requirement by the city council. Contending that Allen Park had violated the United States Constitution by arbitrarily rejecting a request for a waiver of the residency requirement, Mrs. Campbell and her husband brought a civil rights action against Allen Park in federal court. The plaintiffs sought an order of reinstatement with back pay plus other relief.

While the federal action was pending, a state court to which Mrs. Campbell had appealed her discharge entered judgment in her favor. The federal district court thereafter granted summary judgment for the city, dismissing the case on the ground that no constitutional violation had occurred.

We shall affirm the district court's judgment. In the first place, we agree that the Constitution was not violated. In the second place, Mrs. Campbell's election to pursue her remedies under state law had already resulted in her being reinstated, with an award of back pay, before the federal case came on for decision. That, in our view, ought to have ended the matter.

\*     \*     \*     \*     \*     \*

Debra Campbell, née Debra Hassell, was employed by Allen Park as a radio alarm operator in the fire department. In the fall of 1984 she became engaged to marry Dale Campbell, a firefighter employed by the neighboring city of Lincoln Park. That city had a residency requirement of its own, and Mr. Campbell was subject to it. Because he already owned a house in Lincoln Park, he and Miss Hassell decided that she would request an exemption from Allen Park's residency requirement so that the couple could live together in the Lincoln Park house after their marriage.

Miss Hassell wrote the Mayor and Council of Allen Park, shortly before her marriage, to request the exemption. Upon returning from her honeymoon, she made inquiry of the City Clerk as to the status of her exemption request and was told that the request was being processed. She says that she was also told she could live outside Allen Park while awaiting the Council's ruling, and she claims to have done so in reliance on this representation.

A month or two later the Council denied the exemption request. Shortly before the Council acted, Mrs. Campbell received a "Notice of Termination" from the Mayor. The notice, which did not refer to the advice allegedly given by the City Clerk, stated that Mrs. Campbell's employment was terminated because her non-residency was in violation of the Allen Park City Charter.

Mrs. Campbell elected to take advantage of the review procedures available under the Firemen and Policemen Civil Service System, M.C.L.A. §§ 38.501 *et seq.* A hearing was held before the Fire and Police Civil Service Commission, but Mrs. Campbell was denied the opportunity to show, as she said she was prepared to do, that the real reason for her discharge was that she had requested a pregnancy leave. She was also denied the opportunity to show that she had obtained permission to live in Lincoln Park while her request for a waiver of the residency requirement was pending before the city council. The Commission upheld Mrs. Campbell's discharge.

Mrs. Campbell appealed the Commission's order to the Wayne County Circuit Court. Holding that the Commission had erred in refusing to entertain Mrs. Campbell's pregnancy and estoppel claims and had erred in failing to make written findings of fact, the circuit court reversed the Commission's decision, awarded Mrs. Campbell back pay from the date of her termination, and remanded the case for further proceedings. Before such proceedings were held, the Allen Park City Council granted Mrs. Campbell an exemption from the residency requirement.

Subsequent to the initiation of the appeal to the Wayne County Circuit Court and prior to the decision by that court, the Campbells instituted the present federal court action under 42 U.S.C. § 1983. The Campbells' complaint alleged that the city's refusal to waive its residency requirement violated their constitutional rights to equal protection and substantive due process of law by arbitrarily interfering with their rights to travel and to marry. The relief sought included declaratory and injunctive relief, an order of reinstatement with back pay, and an award of damages "for extreme shock, mortification, and emotional suffering, in addition to costs, interest, and attorney fees...."

Cross motions for summary judgment were filed, and after oral argument the district court granted the city's motion and dismissed the case, holding that the city had not violated any right secured by the Constitution. This appeal followed.

\*     \*.     \*     \*     \*     \*

■ Although the issue was not raised by the city, we are hard pressed to understand why the plaintiffs should have been thought entitled to proceed with their federal court action after Mrs. Campbell had

been reinstated with back pay. See *Punton v. City of Seattle*, 805 F.2d 1378 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987), where a Seattle police officer who had been dismissed from his job appealed to the civil service commission and lost, then appealed to a state court where he won reinstatement with back pay, and thereafter brought a § 1983 action in federal court seeking damages for emotional distress and attorney fees. The Court of Appeals for the Ninth Circuit held that the state court judgment barred any supplemental relief under § 1983:

> "Punton's election to proceed initially in the state court amounted to a splitting of his cause of action as well as an election of remedies. At the start, he could have proceeded directly in federal court with a § 1983 claim for reinstatement, back pay, and general damages. Instead, he first chose to seek the relief of reinstatement and back pay in the state court.

> \*     \*     \*     \*     \*     \*

> "We recently held in an employment grievance case originating in California that claim preclusion arising from a state court mandamus action in which substantial but incomplete relief was granted barred relitigation of the claim in federal court under § 1983. *Clark v. Yosemite Community College District*, 785 F.2d 781 (9th Cir.1986)

> \*     \*     \*     \*     \*     \*

> "Another instructive case is that of a police officer in Philadelphia who was charged with a crime, discharged from his job, acquitted after trial, and upon application to the municipal Civil Service Commission, reinstated without back pay. *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.1984). The commission found that whether or not Cohen had participated in the burglary for which he was acquitted, he had violated police department rules by lending money to a superior officer. Cohen thereupon sued in federal court, alleging a § 1983 claim.

Summary judgment for the city was affirmed on the basis of claim preclusion.

\*     \*     \*     \*     \*     \*

> "We have found no Supreme Court case holding that merely because litigation strategy and the perceived advantages of a more adequate award in federal court make it an attractive alternative, a person aggrieved by official state action can abandon a remedy that colorably satisfies due process of law in the state court after recovering substantially what he has lost. On the contrary, *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984), instructs to the contrary." *Punton*, 805 F.2d 1378 at 1381–83, *passim*.

We called the parties' attention to the *Punton* decision at the time of oral argument and invited them to comment on it in post-argument filings. The plaintiffs filed a supplemental brief arguing that *Punton* is distinguishable on the following grounds, among others: (1) Mr. Punton relied on the same underlying legal theories in both state and federal court, whereas here the legal theories advanced in the two courts are different; (2) Mr. Punton sought to use the favorable result in the state proceeding "to set up offensive collateral estoppel" in the federal court, whereas the plaintiffs in this case make no attempt to invoke the collateral estoppel doctrine; and (3) the plaintiffs in this case cannot be charged with having split their cause of action, because the constitutionality of the city's denial of the waiver requested by Mrs. Campbell could not have been litigated in the state court proceeding.

The city agrees that "[n]o state action was brought as to [the] issue ... whether a city ordinance establishing a residency requirement and providing for the waiver of such requirement, works to create a liberty interest in the waiver of the residency requirement to an extent that a city employee is entitled to due process upon requesting such waiver." The city does suggest, however, that "[i]f *Punton* is extended to include situations involving different *issues* which, however, lead to substantially the

same *type* of *damages*, then it arguably would be applicable." The city expresses no opinion as to whether the plaintiffs could have litigated the constitutional issue in the state court had they wished to raise it there.

It is true that the legal theory advanced by the plaintiffs here differs from their theory in the state court proceeding, and it is also true that the plaintiffs have not sought to invoke the collateral estoppel doctrine. We doubt, however, that the plaintiffs are correct in thinking that constitutional claims may not be asserted in appeals from police and firefighters civil service commission decisions; see *Shelby Township Fire Department v. Shields*, 115 Mich.App. 98, 320 N.W.2d 306 (1982), where a discharged fireman made a Fourteenth Amendment argument in just such an appeal.

Be that as it may, it is indisputable that a major part of the relief sought in the Campbells' federal action—reinstatement with back pay—had already been achieved by the time the federal action came on for decision. The reinstatement of Mrs. Campbell was the result of "voluntary" action taken by the city council after the state court had reversed the decision of the civil service commission and had remanded the case with an award of back pay, whereas the reinstatement in *Punton* was ordered by the state court directly; in both situations, however, the federal case had become moot, in effect, except insofar as the claims for attorney fees and damages for emotional distress might have remained viable. It seems to us that the result reached in *Punton* supports the conclusion that once Mrs. Campbell had been restored to her employment with an award of back pay, she was no longer free to pursue her federal claim even though she had not received attorney fees and damages for emotional distress.

Under Article III of the United States Constitution, federal courts sit to decide live, current controversies, and not to pontificate on constitutional questions that have become academic as far as the litigants are concerned. The constitutionality of Mrs.

Campbell's discharge became moot once she was restored to her job with a judgment for back pay, unless the claim for additional monetary damages kept the constitutional issue alive. In light of *Punton*, we doubt that it did.

\*　　\*　　\*　　\*　　\*　　\*

As to the district court's ruling that there was no violation of a constitutional right, the Campbells tell us that

> "[a]lthough the District Court, in its opinion, recognized that Plaintiffs were challenging the application of the exemption provision only, the Court's analysis makes it clear that it treated the case as a facial challenge. The Court continually indicates through its opinion that municipal residency requirements have not been held to be irrational. The District Court's opinion utterly fails to address the issue of whether in ruling on an exemption to the requirement, which is specifically allowed by the requirement at issue, a municipality may act unreasonably, irrationally, capriciously, or discriminatorily. This was the question that was before the Court, and the Court completely failed to address it in its opinion granting the Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion."

In conceding the validity of the residency requirement—in conceding, that is, that the municipality could uniformly terminate the employment of workers who did not meet the municipal residency requirements—the plaintiffs were reading the case law correctly. See *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). The plaintiffs were not correct, however, in suggesting that the district court ignored the claim that Mrs. Campbell's request for an exemption had been denied for arbitrary, capricious or discriminatory reasons. The district court expressed itself on this as follows:

> "Plaintiffs have repeatedly protested that they are not claiming a violation of procedural due process. They argue, however, that the Allen Park City Council acted arbitrarily and capriciously in

refusing to grant Mrs. Campbell an exemption from the residence requirement—an argument usually associated with procedural due process claims. A diligent reading of their pleadings leads the court to conclude that plaintiffs' claim, in fact, does not rest on procedural grounds, since no increase in the amount or difference in the type of procedural safeguards would have cured the damage they claim. Rather, it is the *right* of the City to deny Mrs. Campbell an exemption which they challenge and which this court has upheld.

"Unless by acting arbitrarily and capriciously, the city denied plaintiffs a liberty or property interest protected by the Constitution or created by state law, the due process guarantee of the Fourteenth Amendment does not apply. The court has found that plaintiffs' liberty interests in marriage and travel have not been infringed by the City's action, and plaintiffs themselves have denied that their claim is based on an entitlement created by state law. Therefore, whether the City Council acted arbitrarily or not in refusing to grant the exemption, no violation of the Fourteenth Amendment has occurred. The decision is not an arbitrary one, moreover, as it rejected the availability of an exemption for the most common argument against all such regulations: a preference in family housing. To grant plaintiffs' request would have required the granting of innumerable others."

The plaintiffs' argument may bear some resemblance to arguments based on the "void for vagueness" or "overbreadth" concepts. In essence plaintiffs assert that because the Supreme Court has recognized a right to travel and a right to marry as "fundamental" rights, the Equal Protection and Due Process Clauses require the use of particularized objective standards in granting or withholding any waiver of the residency requirement so as to minimize any interference with those rights. The plaintiffs might have a point if their case were based on the First Amendment. See, *e.g.*, *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). This is not a First Amendment case, however, and we would not be justified in proceeding as if it were. *Zablocki v. Redhail*, 434 U.S. 374, 409–410, 98 S.Ct. 673, 693–94, 54 L.Ed.2d 618 (Rehnquist, J., dissenting).

The Supreme Court has stated that "any durational residence requirement impinges to some extent on the right to travel," but only those which are "penalties upon the exercise of the constitutional right of interstate travel" are unconstitutional. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 256, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1974). *Cf. Zobel v. Williams*, 457 U.S. 55, 60–61, 102 S.Ct. 2309, 2312–13, 72 L.Ed.2d 672 (1982). Similarly, not "every state regulation which relates in any way to the incidents of or prerequisites for marriage" is unconstitutional. *Zablocki, supra*, 434 U.S. at 386, 98 S.Ct. at 681. The failure of the City of Allen Park to establish objective particularized standards for denying exemptions from the residency requirement does not significantly interfere with the right to marry and does not penalize interstate travel. The city's denial of the exemption was not irrational, and we are unwilling to hold it unconstitutional.

The judgment of the district court is AFFIRMED.