Norman **BRALEY**, Plaintiff–Appellant,

v.

**CITY OF PONTIAC**, Defendant,

**Stanley Helgemo, Sergeant; Arthur Rouse and Roland Garcia, Officers, Defendants–Appellees.**

No. 89–1537.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1990.

Decided June 19, 1990.

Robert C. Vandenbroucke (argued), Berkley, Mich., for plaintiff-appellant.

S. David McNeill, Richard G. Lewandowski (argued), Troy, Mich., defendants-appellees.

Before: NELSON and BOGGS, Circuit Judges; and BATTISTI, District Judge.*

* The Honorable Frank J. Battisti, United States District Judge for the Northern District of Ohio, sitting by designation.

BOGGS, Circuit Judge.

Norman Braley appeals the dismissal of his federal claims against Pontiac Police Sergeant Stanley Helgemo on motions for summary judgment. Because Braley has received substantial satisfaction of his claims in state court, we affirm the summary judgment for Sergeant Helgemo in the federal action.

I

On May 4, 1983, Normal Braley was driving his car in the city of Pontiac when he was cut off by a police car changing lanes. The police car was being driven by Sergeant Stanley Helgemo. Braley pursued Sergeant Helgemo in his car and signalled for Helgemo to pull over by flashing his lights and sounding his horn. Helgemo pulled over to allow Braley to pass so that he could stop Braley for driving with his high beam lights on. Instead, Braley stopped his car, approached Sergeant Helgemo, and engaged him in a heated verbal exchange. Braley informed Helgemo that he intended to file a citizen's complaint and asked for Helgemo's badge number. Helgemo refused and asked to see Braley's driver's license. Braley refused to produce his license.[1] Helgemo then arrested Braley and called for a backup unit to transport Braley to police headquarters. Officers Arthur Rouse and Roland Garcia arrived, handcuffed Braley and took him to the Pontiac Police Station, where he was fingerprinted and photographed. At the station, Braley continued to refuse to identify himself. Braley was then transported to Oakland County Jail where he was held overnight. The next day he was arraigned on charges of (1) operating a motor vehicle without an operator's license and (2) obstructing and hindering a police officer in the performance of his duties. He was ordered to post a cash bond of $2,000. On September 14, 1983, Braley was tried on the two charges and found not guilty by a jury.

On November 13, 1984, Braley filed suit in federal district court against Officers Helgemo, Rouse, and Garcia and the City of Pontiac alleging violation of 42 U.S.C. § 1983 as well as three pendent state claims alleging malicious prosecution, false arrest and imprisonment, and intentional infliction of emotional injury. He also sought attorney fees under 42 U.S.C. § 1988.[2]

The district court dismissed the three pendent state claims without prejudice on January 23, 1985. In April 1985, while the federal claims were still pending, Braley filed a complaint in state court based on the three state claims. The City of Pontiac was dismissed as a defendant from the state action on the ground of governmental immunity. At trial on the state claims in August 1988, the judge dismissed the claim of intentional infliction of emotional injury on a motion for directed verdict. The jury returned a verdict in favor of Braley against Sergeant Helgemo on the claims of false arrest and imprisonment and malicious prosecution for the bringing of the charge of obstructing an officer in the performance of his duty.[3] The jury awarded Braley $5,000 for the arrest, $5,000 for the false imprisonment and $10,000 for the malicious prosecution, for a total of $20,000.

After the jury verdict for Braley in the state case, all defendants filed a motion for summary judgment in the still-pending federal case, on the ground that Braley had found an adequate remedy in state court. On the recommendation of a magistrate's report, the district court granted the motion on March 31, 1989. Braley appealed that decision to this court.

---

1. It was determined at trial that Braley had a valid driver's license at the time.

2. Another count of Braley's complaint alleged a cause of action for independent claims against the City of Pontiac. The claims against Pontiac were dismissed in the state action and are not being pursued on appeal.

3. Specifically, the jury found no cause of action against any of the defendants on claims arising out of the charge of driving without an operator's license; it also found no cause of action against Officers Rouse and Garcia on the claims arising from the charge of obstructing an officer in performance of his duty.

## II

Norman Braley seeks in federal court to vindicate constitutional rights that have already been vindicated in state court. Although an action under § 1983 is generally supplemental to a common law action arising out of the same set of facts, once appellant obtained substantial satisfaction of his underlying claim in state court, the federal issue of the constitutionality of the police action became moot. *Campbell v. City of Allen Park*, 829 F.2d 576, 578–80 (6th Cir.1987). Appellant's § 1983 action remains alive after he has obtained relief on the underlying substantive claims in state court only if he now seeks to vindicate a constitutional right in federal court that was not adequately vindicated in the state action. In order to determine that, it is necessary to identify the specific constitutional basis of the § 1983 action.

Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere. Appellant's complaint is sparse on the matter of precisely which constitutional guarantees he is seeking to vindicate. The § 1983 claim is contained in Count VI of the complaint, which states simply that appellant was "deprived of the rights, privileges and immunities guaranteed him under the Constitution and laws of the United States of America and of the State of Michigan, as set forth above, in violation of 42 U.S.C. § 1983." Because appellant does not state the specific constitutional guarantees allegedly violated, the court must reconstruct them. Based on the remainder of the complaint, the briefs, and the arguments before this court, it appears that appellant alleges he was unconstitutionally deprived of his liberty without due process of law, in violation of the fourteenth amendment. It appears further that this constitutional claim is based solely on the underlying allegations of false arrest, false imprisonment and malicious prosecution.[4]

Braley does not allege that the Pontiac police officers used excessive force in arresting him. Although angry words were exchanged between Braley and Sergeant Helgemo, none of the police officers physically assaulted him. There is no allegation that the arrest took place in violation of the fourth amendment's prohibition against unreasonable seizures. By failing to produce his license on demand, appellant gave Sergeant Helgemo a sufficient ground reasonably to conclude that he was driving without a license. Braley does not allege that he was mistreated while in detention. Officers Garcia and Rouse drove appellant to the police station where he was booked and held overnight, apparently without incident. Thus, there is no basis for a claim that appellant's eighth amendment rights were violated. The only allegations upon which appellant's § 1983 claim can be based are the false arrest, false imprisonment, and malicious prosecution. All three allegations were adequately addressed and substantially remedied in the state court action.

It is well established that an action brought under § 1983 is supplemental to a common law action arising out of the same factual circumstances. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, a plaintiff may generally pursue remedies under the tort law and under § 1983 simultaneously. The general doctrine of the supplemental nature of § 1983, however, does not mean that a plaintiff who makes out a constitutional claim will get two vindications of that claim. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (§ 1983 action not available for deprivation of property without due process where there exists a state remedy that comports with procedural due process); *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (en banc) (extending *Parratt* to deprivations of liberty). A supplemental § 1983 action is available where it seeks to vindicate a constitutional right that was not adequately vindicated by the state law action.

---

**4.** Count VI of the complaint "incorporates by reference the allegations in [all earlier paragraphs], as if the same were set forth in full herein."

In this case, appellant claims that his constitutional rights were violated by the police officers when they falsely arrested and imprisoned him and maliciously prosecuted him. Insofar as these claims state constitutional violations, the violations were addressed at the state trial and remedied by the award of $20,000. Appellant does not raise on appeal any constitutional guarantees that were not vindicated through the state remedy.

This case is similar to *Campbell v. City of Allen Park*, 829 F.2d 576 (6th Cir.1987). The similarity lies in the fact that the plaintiff in *Campbell* obtained substantial satisfaction in state court of the claims on which her § 1983 action was based. In *Campbell*, a city employee in Allen Park, Michigan moved outside the city limits upon marrying a non-resident and was dismissed from her job for violating the city's residency requirement. She sued in federal court under § 1983, seeking reinstatement and back pay. She also appealed her discharge in the Michigan courts. The state court awarded her back pay, whereupon the city created an exception to the residency requirement for her, allowing her to resume her city job. The federal court then dismissed the § 1983 action on the ground that no constitutional violation had occurred. This court affirmed the district court's ruling, and held, as an alternative ground for its decision, that the substantial remedy obtained by Campbell in the state court rendered the federal claim moot. 829 F.2d at 578–80.

■ We note that the recovery obtained by appellant in the state court may not be identical to the recovery he could have obtained in federal court. Appellant attempts to distinguish his state claims for false arrest, false imprisonment, and malicious prosecution from his § 1983 constitutional claim on the ground that § 1983 entitles him to seek punitive damages that were not available to him in the state action. That argument does not work. A difference in the amount of damages available to a plaintiff under § 1983 and those available under a related state law claim does not justify a separate § 1983 action. *Parratt*, 451 U.S.

at 544, 101 S.Ct. at 1917 (state remedy need not provide all the relief available under § 1983 in order to be adequate under due process clause); *Wilson*, 770 F.2d at 584.

The result in this case is supported by the decision in *Punton v. City of Seattle*, 805 F.2d 1378 (9th Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987). In *Punton*, a plaintiff who had brought state claims in state court and a § 1983 action in federal court was barred from pursuing the § 1983 action by the doctrine of claim preclusion after a favorable decision in the state court action. Our action in upholding the dismissal of appellant's § 1983 claim is also consistent with decisions in this Circuit concerning double recovery under state and § 1983 actions. In *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 523–26 (6th Cir.1987) (Nelson, concurring) it was noted that successful recovery or satisfaction of a plaintiff's claim under a state law theory barred further recovery under § 1983. In *Wilson v. Beebe*, 770 F.2d at 585, a case in which a § 1983 claim was pursued in federal court simultaneously with pendent state claims, the court noted in passing that the plaintiff "may not recover twice for the same injuries resulting from a single negligent act."

### III

Independent of the question of whether appellant's recovery of damages in state court bars his § 1983 action, we hold that appellant fails to state a constitutional claim on which his § 1983 action might be based. Therefore, it was properly dismissed by the district court.

What is involved in this case is an alleged deprivation of appellant's liberty interest without due process. Courts have analyzed § 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process. Violations of substantive due process are further divided into two kinds: (1) deprivation of a particular constitutional guarantee and (2) actions that "government officials may not take no matter what procedural protections accompany them," alter-

natively known as actions that "shock the conscience."[5] *Wilson*, 770 F.2d at 585–86 (quoting, respectively, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) and *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). As noted above, appellant's complaint does not articulate the specific constitutional grounds on which his § 1983 claim is based. It might be based on either procedural or substantive due process. Cases involving allegedly improper arrests have been analyzed under both theories: a procedural due process violation in depriving a person of liberty without a predeprivation hearing, or a substantive due process violation in arresting a person without cause or subjecting an arrestee to treatment that shocks the conscience. We will discuss each in turn.

■ In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court limited the use of § 1983 by holding that in a case involving deprivation of property without due process, a cause of action under § 1983 is not available if there exists a state remedy that comports with procedural due process. This court extended the rule of *Parratt* to cases involving the deprivation of a liberty interest in *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (en banc).

In *Wilson*, a policeman's gun accidentally discharged during an arrest, wounding the arrestee, who then brought suit under § 1983 and also included a pendent state claim for negligence. The district court awarded the plaintiff substantial damages on his pendent claims under Michigan law and dismissed his § 1983 claim. The Court of Appeals upheld recovery under the pendent state claim, but affirmed the dismissal of the § 1983 claim, holding that the available state remedy adequately comported with procedural due process. Similarly, Norman Braley's state tort action provided him with adequate procedural due process

by post-deprivation redress. It addressed all the allegations on which the constitutional claim was based—false arrest, false imprisonment, and malicious prosecution.

Appellant attempts to distinguish *Wilson* on the ground that in *Wilson* the deprivation of liberty was the result of an act of negligence, while Sergeant Helgemo's actions in this case were intentional. That distinction, however, will not save an otherwise defective § 1983 action based on a violation of procedural due process. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court applied the rule of *Parratt* to a case involving the *intentional* violation of procedural due process in the termination of property rights.

> We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

468 U.S. at 533, 104 S.Ct. at 3203. Although *Hudson* involved deprivation of a property interest, its reasoning applies as well to a deprivation of liberty. We see no distinction between negligent and intentional deprivations of liberty as far as procedural due process is concerned. Thus, the adequacy of the state remedy bars appellant from pursuing a § 1983 action on a theory of denial of procedural due process.

■ Nor does appellant state a claim for a denial of substantive due process. If appellant's § 1983 claim is construed to be based on an alleged violation of substantive due process, then the claim must be based either on a violation of an explicit constitutional guarantee (e.g., a fourth amendment illegal seizure violation) or on behavior by a state actor that shocks the conscience. Appellant's complaint alleges no violation of a

---

**5.** This is "a species of substantive due process, apart from any 'specific' of the Bill of Rights, which is violated when law enforcement officers apply undue force in dealing with suspects." *Wilson v. Beebe,* 770 F.2d at 586, citing *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973).

Note that the holding in *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) calls into question the continued existence of this "species" of substantive due process, at least insofar as it exists apart from any specific of the Bill of Rights.

specific constitutional guarantee. Therefore the claim must be based on behavior that shocks the conscience. Appellant suggests as much in his attempt to distinguish *Wilson* on the ground that *Wilson* involved a negligent, not an intentional, deprivation of liberty. In *Wilson*, this court held that a substantive due process violation of the sort that would shock the conscience could only result from an intentional, not a negligent, police action. It does not follow, however, that any intentional improper action by a police officer will rise to the level of a constitutional violation.

Most cases alleging police conduct that shocks the conscience have involved allegations of excessive force or physical brutality. *Wilson v. Beebe*, 770 F.2d 578; *Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D. Mich.1983). Appellant's complaint, however, does not allege excessive force. Therefore, we must determine whether appellant's claims of false arrest, false imprisonment, and malicious prosecution support a claim of deprivation of his substantive due process rights.

Essentially, Braley alleges that Officer Helgemo's misuse of the power represented by his police badge was behavior that would shock the conscience of a reasonable person. Applying the "shock the conscience" test in an area other than excessive force, however, is problematic. Not only are there fewer instances in the case law, but the "shock the conscience" test is not as uniformly applied to cases where excessive force or physical brutality is not the basis of the claim. The "shock the conscience" standard, fuzzy under the best of circumstances, becomes fuzzy beyond a court's power to interpret objectively where there is a dearth of previous decisions on which to base the standard. We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity.

In that area, however, the test has been abandoned. The Supreme Court recently rejected the "shock the conscience" test in cases of excessive force by police. *Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court held that the appropriate standard was the fourth amendment standard for reasonable seizure. The decision in *Graham* was based on the idea that, where available, explicit constitutional guarantees (e.g., protection against unreasonable seizures) offer a more concrete, and therefore superior, guide to judges than intuitive standards such as "behavior that shocks the conscience." After *Graham*, the status of the "shock the conscience" test in contexts other than allegations of excessive force is uncertain.

■ Appellant's allegations of false arrest and false imprisonment do not in themselves form the basis for a § 1983 action. The protections of the Constitution are not coextensive with the protections of the common law; the fact that appellant won in his tort action against appellee for false arrest, false imprisonment and malicious prosecution does not mean that he has stated a constitutional violation. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court found that a plaintiff had failed to state a claim for a constitutional violation where he had been arrested and imprisoned for eight days due to a mistake in identity. As in *Baker*, where the arrest was made pursuant to a validly obtained warrant and thus did not violate the fourth amendment, Sergeant Helgemo's arrest of appellant in this case was made pursuant to probable cause to believe that he had operated his vehicle in an unsafe manner and was driving without a license. Moreover, although Braley suffered a deprivation of liberty as a result of his improper arrest and imprisonment, it was less severe than the deprivation of liberty suffered by the unsuccessful plaintiff in *Baker*.

The Supreme Court has not spoken on whether a claim of malicious prosecution will support a § 1983 action for violation of a constitutional guarantee. There is no consensus among the circuits.[6] This court, while not ruling out such actions, rejected a § 1983 claim based on malicious prosecution in *McMaster v. Cabinet for Human*

---

**6.** See cases cited in *Hand v. Gary*, 838 F.2d 1420, 1424 n. 4 (5th Cir.1988) and *Wheeler v. Cosden*

*Oil and Chemical Co.*, 734 F.2d 254, 260 n. 14 (5th Cir.1984).

*Resources,* 824 F.2d 518 (6th Cir.1987). However, the Sixth Circuit permitted a § 1983 action based on malicious prosecution in *Dunn v. State of Tennessee,* 697 F.2d 121 (6th Cir.1982) *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

The mere prosecution of appellant does not create a constitutional claim under § 1983. Where this court has recognized a claim under § 1983 for malicious prosecution, it was not the prosecution itself that formed the substance of the constitutional violation; it was rather that the prosecution had the effect of causing a violation of a constitutional guarantee. In *Dunn v. State of Tennessee,* the plaintiff was prosecuted for interfering with police officers in the performance of their duties after standing in his doorway to prevent police from conducting a warrantless search of his home. In allowing the plaintiff to proceed with his § 1983 action under a malicious prosecution theory, this court held that the plaintiff had been prosecuted for exercising his fourth amendment right to be secure from unreasonable searches. *Dunn,* 697 F.2d at 125–26.

There is no analogy to the present case. Braley was prosecuted for driving without a license and interfering with a police officer in the performance of his duty. The prosecution for driving without a license cannot form the basis of a constitutional claim because Braley's failure to produce his license on demand established probable cause for arrest and prosecution. Moreover, unlike the plaintiff in *Dunn,* Braley's prosecution for interfering with a police officer in the performance of his duties was not based on his exercise of a specific constitutional right. The plaintiff in *Dunn* was attempting to prevent police officers from conducting a search without a proper warrant, a fourth amendment violation. Braley was attempting to air a grievance with an officer over a traffic incident. Braley's efforts to express his consternation to Officer Helgemo, while perhaps understandable under the circumstances, cannot properly be characterized as an attempt to protect a constitutional guarantee. Therefore, his arrest and prosecution for those efforts—while they could and did form the

basis of a successful tort action for malicious prosecution—cannot form the basis of a § 1983 claim for deprivation of rights secured by the Constitution.

## IV

█ Appellant devotes the bulk of his brief to the argument that his § 1983 claim should not have been dismissed on a motion for summary judgment, as defendants had not carried their burden of showing that there was no genuine issue of material fact (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). He argues that whether Sergeant Helgemo's conduct was such as to shock the conscience was a genuine issue of material fact that should have been left for a jury. On that point, appellant is wrong. Courts have recognized the possibility of deciding that certain behavior does not shock the conscience *as a matter of law.* In *Wilson v. Beebe,* the court determined, as a matter of law, that the accidental shooting of an arrestee did not shock the conscience. See also *Barnier v. Szentmiklosi,* 565 F.Supp. at 880 n. 21 (E.D.Mich.1983).

Appellant also argues that his cause of action under 42 U.S.C. § 1986 should not have been dismissed. We disagree. The magistrate recommended, and the district court agreed, that appellant's § 1986 claim be dismissed because appellant failed to allege an underlying cause of action under § 1985. That dismissal was proper. Section 1986 creates a cause of action for knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with civil rights, as described in 42 U.S.C. § 1985. Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986. *Williams v. St. Joseph Hospital,* 629 F.2d 448 (7th Cir. 1980); *Lyon v. Temple University,* 507 F.Supp. 471 (E.D.Pa.1981).

## V

Accordingly, the decision of the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring.

The Fourteenth Amendment prohibits a state from depriving any person of liberty

without due process of law. In a number of decisions, including *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (en banc), this court, like others, has recognized a distinction not apparent in the language of the Constitution: a distinction between "procedural" due process of law, which sounds redundant, and "substantive" due process of law, which sounds like a contradiction in terms.

I must take it as given that the Due Process Clause does in fact have what the Supreme Court calls a "substantive component," see *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and that circumstances can exist in which a person might be found to have been deprived of liberty without "substantive due process of law." But I am reluctant to try to come to grips with that "ephemeral concept," as we called it in *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988), absent a clear necessity for doing so. I see no such necessity here. I have no quarrel with the answer the court gives to the question of whether the defendant's conduct "shocks the conscience," however, and in all other respects I fully concur in the court's opinion.

District Judge BATTISTI joins in this concurrence.