**MANSFIELD APARTMENT OWNERS ASSOCIATION, et al., Plaintiffs–Appellants,**

v.

**CITY OF MANSFIELD, et al., Defendants–Appellees.**

**No. 92–3021.**

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 20, 1992.

Decided March 12, 1993.

Richard G. Beer, pro se.

Bruce Jewett, pro se.

Paul W. Allison, Sue M. Douglas, James D. Kurek, Vincent J. Tersigni, Buckingham, Doolittle & Burroughs, Akron, OH, for defendants-appellees.

Before: KENNEDY, MARTIN, and SUHRHEINRICH, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiffs Mansfield Apartment Owners Association appeal the order of the District Court granting summary judgment in favor of defendants City of Mansfield, et al., in this civil rights action challenging the defendants' policy of refusing to provide water service to landlords until the delinquent accounts of plaintiffs' former tenants are paid. Plaintiffs argue on appeal that the District Court erred in granting summary judgment, that defendants' practices and policies deprived plaintiffs of the due process of law, and that Ohio's four-year residual personal limitations period should govern this action. For the reasons that follow, we affirm the District Court's grant of summary judgment.

I.

The City of Mansfield provides water service to its citizens under the guidelines provided in the City's Water Division Regulations, issued pursuant to City Ordinances. Under those Regulations, the water account may be established in either the name of the tenant or the landowner when the City provides water service to a rental property. Pursuant to Water Division Regulation 941.04(e),[1] where a landowner has obtained the beneficial arrangement of having water service connected to the property and the tenants pay their own water bills, the landowner is held ultimately responsible for the tenant's unpaid water bills.

When a water bill is in the name of the tenant and the tenant's bill is delinquent, i.e. approximately one month overdue, a

Edward L. Gilbert, Akron, OH, for plaintiffs-appellants Mansfield Apartment Owners Ass'n, Dan Roane, and Alpha & Omega Church of God in Christ.

Wallace Toward, pro se.

---

**1.** Mansfield Water Regulation 941.04(e) provides that "[i]n all cases, the owner of the premises shall be primarily liable for all charges for each water service account to the premises."

termination notice is sent to the tenant stating that water service will be terminated unless payment is made by a specified date. The notice states the reason for the termination, the action the tenant may take to avoid the termination, and the hearing procedures available to contest the reasons for the termination. At the same time notice is sent to the tenant, a water termination notice is also sent to the landowner advising of the tenant's delinquency, and the landowner's own right to a hearing to contest the termination.

If a delinquent bill has not been paid and no hearing has been requested, the tenant receives a second notice of water termination (approximately two weeks later). The landowner does not receive a second notice. However, upon inquiry, landowners have access to all information regarding the status of water accounts in the names of their tenants. According to the landowners, it takes at least thirty minutes to check the payment record of one tenant. If the water bill has not been paid by the termination date, a crew is sent to give final notice and shut off the tenant's water.[2]

Pursuant to City Ordinance and Water Division Regulations, the landowner is held primarily liable for all charges for each water service account at the owner's premises. Therefore, when a tenant moves out of the premises without paying a delinquent water bill, the City of Mansfield Utilities Collection Department transfers the delinquency to the landowner's account. The landowner receives notice of the transfer. The landowners may request that water service to the property be terminated to avoid the transfer of additional delinquencies to their accounts.

The City's water department will not establish new service to any person who has a delinquent water service account. Because of the administrative difficulties involved in tracking the movements of all tenants, the City keeps track of delinquencies by property and not by person.

When a property is sold and the new purchaser receives a water bill for delinquencies incurred by the former owner or tenant, the purchaser merely needs to provide the Utility Collection Department with evidence of the purchase in order to negate his responsibility for the bill. However, in the event a lien has been placed on the tax record and duplicate by the County Auditor for delinquent water bills prior to the time of the purchase, then the new purchaser is obligated to pay the charges.

Whenever "customers" or "consumers"[3] have a dispute regarding water service and bill collection, they may request a hearing by filling out a "Form–6" provided by the water department. Once a customer has properly requested a hearing to contest any charge assessed by the City, the customer is not required to pay the bill in question unless and until ordered to do so by the decision of the hearing officer or upon settlement of the dispute.

Upon receipt of the written request for hearing, the Utility Collections Department sends a notice of hearing and of hearing rights, setting forth the time and date of the hearing, to the requesting party.[4] At the hearing, the customer may present evidence or testimony and may be represented by an attorney. After hearing the evidence, a decision is issued by the Board of Utility Appeals.

---

2. In the affidavit of Plaintiff Toward, he claims that, despite the termination notices, the City does not terminate delinquent tenant accounts, but rather allows the delinquencies to accumulate.

3. Water Division Regulation 941.01(b)(1) defines these terms as follows:

"Customer" means any person or entity who enters into an agreement with the City to pay for water services to a premises ...

"Consumer" means any head of household or entity who resides at a premises to which water service is provided by the City.

4. For the first year the City held hearings, 1983–84, the City's assistant Law Director sat as the hearing officer; from 1984–88, the hearings were conducted by a hearing officer selected by the Safety–Service Director from one of the City's departments; beginning in January 1988, pursuant to a City Ordinance, a Board of Utility Appeals was established for hearing customers' disputes regarding water service.

As of March 1, 1991, according to the records of the Manager of the Utility Collections Department, the plaintiffs together owed $30,551.00 for water and sewer service provided their properties. Due to these delinquencies, the plaintiffs were not permitted to put new water service in their own names.

On June 20, 1988, the plaintiffs filed their complaint with the District Court, alleging that the manner in which the City provides water service, collects delinquent water bills, and resolves disputes regarding such water service, violated their right to due process under the Fourteenth Amendment. On October 23, 1991, the District Court granted summary judgment in favor of the defendants, finding that the City's policies and practices did not violate the due process clause. The court further found that plaintiffs' section 1983 claims were barred by their failure to pursue adequate state remedies, and the appropriate statute of limitations was Ohio's two-year residual or general statute of limitations for personal injury actions. This appeal followed.

## II.

 Plaintiffs contend that the District Court erred in granting summary judgment for the defendants. We review a grant of summary judgment *de novo*, making all reasonable inferences in favor of the non-moving party. *EEOC v. University of Detroit*, 904 F.2d 331, 332 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The inquiry is whether there is sufficient evidence supporting a factual dispute that a judge or jury is required to "resolve the parties differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

Plaintiffs claim that in granting summary judgment, the District Court relied upon the defendants' factual assertions and ignored issues of fact raised by the plaintiffs. However, in its decision, the District Court set forth the facts based upon the affidavit of Plaintiff Wallace Toward. "Despite extensive discovery, this affidavit is the sole document referred to by the plaintiffs," in their opposition to the motion for summary judgment. To summarize, this affidavit contended that: (1) defendants had delinquent tenants' accounts transferred for payment to accounts in the name of plaintiffs; (2) defendants transferred to plaintiffs' account for payment, delinquent sums not paid by previous owners on properties which plaintiffs now own but did not own when the delinquencies were established; (3) plaintiffs were told by Water Division personnel that landlords do not have a hearing right under water regulations; (4) the City refused to credit plaintiffs' accounts when a tenant paid a delinquent account; and (5) the City refused to establish or reestablish water service to the property unless plaintiffs paid the assessment amounts accrued and unpaid by the former owner or tenants. Contention number one is undisputed. Numbers two and four are undisputed to the extent that the new owners had to pay if a lien was already established or the new owner failed to provide proof of purchase. The District Court accepted all the contentions as true and still found no dispute as to any material issues of fact. In addition, these "litany of abuses" were enunciated by the plaintiffs in order to support their procedural due process claim, not to raise genuine issues of material fact. Therefore, we focus on the question of whether the defendants were entitled to summary judgment as a matter of law.

## III.

Plaintiffs contend that the City of Mansfield's practices constitute deprivation of property without due process. This Court has analyzed section 1983 actions based on deprivations of due process as falling into two categories: violations of procedural

due process and violations of substantive due process; the latter being further subdivided into: (1) deprivations of a particular constitutional guarantee and (2) actions that "shock the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 224–25 (6th Cir.1990).

### A.

In order for plaintiffs to demand due process protection under the Fourteenth Amendment, they must possess a constitutionally protected liberty or property interest in continued water service. It is well settled that the expectation of utility services rises to the level of a "legitimate claim of entitlement" encompassed in the category of property interests protected by the due process clause. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). To determine exactly what procedures are necessary to protect a particular property interest, the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) established the following balancing test for the courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Chernin v. Welchans*, 844 F.2d 322, 325–26 (6th Cir.1988) (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903). It is undisputed that the private interest in receiving water service is strong, as is the City's interest in recovering the cost of providing this service. Therefore, the key inquiry in this case concerns the potential for erroneous deprivation of this water service. Our examination of the alleged abuses described by plaintiffs demonstrates that the plaintiffs have not suffered a deprivation of property without due process of law.

The City of Mansfield's Utilities Collection Department operates under the Water Division Regulations and City Ordinances. These Regulations hold the landowner primarily liable for water service provided to his property. Water Div. Reg. 941.04(e). It is clear, however, that several pertinent policies of the City of Mansfield provide landowners adequate procedural safeguards against an erroneous deprivation of property. The District Court adequately summarized the procedural protections afforded:

> When a tenant's water bill becomes delinquent, a Form–A Water termination notice is sent to both the tenant and the landlord. This notice is mandated by Water Div. Reg. 941.12(f)(1) ... Likewise, denial of a subsequent landlord or tenant application for water service triggers the right to a "written notice of the reasons for the denial and of the right of the person or entity to request a hearing at which to contest the denial." Mansfield Water Div. Reg. 941.04(d). The mandatory language of this subsection requires the City to grant a hearing if one is requested. *Id.* The regulations further provide that a customer has a right to a hearing to dispute the amount of any charge assessed to, or credit given to an account. Mansfield Water Div. Reg. 941.07(f). Finally, the Water Division Regulations dictate that purchasers of property cannot be deprived of water service due to the outstanding obligations of prior owners or tenants. All of the above sections incorporate by reference Section 941.13(a), titled "Hearings," which notes that "[t]he City reserves the right to require that the applicant (for a hearing) sign a request for a hearing form."

Plaintiffs' suggestion that these procedural protections are deficient is without merit. Plaintiffs contend that they were deprived of a hearing because they are not considered a "customer" or "consumer" pursuant to Water Div. Reg. 941.01(b)(1). However, an examination of the Hearing Officers Decision Forms contained in the record, indicates that the plaintiff landlords were considered "customers" for the pur-

pose of disputing water bills.[5] In addition, the Mansfield Water Division Regulations provide that where delinquent water bills are not paid by the tenant, the landlord receives a notice that the delinquencies are being transferred to the landlord's water account. To contest these assessments, the owner merely needs to file a request for hearing on the "Form 6". When a request for hearing is made, any obligation to pay the delinquent bill is stayed pending the outcome of the hearing.

■ Plaintiffs contend, however, that when they telephoned the Water Division, they were told by its employees that they possessed no right to a hearing because they did not meet the definition of customer or consumer as provided for in the regulations. These oral disclaimers, however, do not amount to a violation of procedural due process. First, we find any reliance by plaintiffs on these oral statements to be unwarranted. Plaintiffs had, several times in the past, made proper requests for, and exercised their right to, a hearing to dispute their water bill. Plaintiff Toward admitted in prior depositions that he was aware of the City's grievance procedures. Mr. Toward has proffered no evidence that he was ever denied a hearing which was properly requested on the City's Form–6 ("Notice of Hearing and Hearing Rights"). In fact, the record indicates that the only time Mr. Toward was denied a hearing was when he had already received a hearing on the identical claims and he was trying to relitigate those claims.

■ Furthermore, "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Therefore, the City is not liable for the conduct of its non-policy-making employees who act contrary to the policies of the City. Consequently, plain-

tiffs are bound by the procedures set forth in the City's Rules and Water Regulations. These regulations are replete with regulation-mandated notice and hearing rights. We agree with the District Court that these policies and practices "unquestionably comport with the standards of procedural due process." *See Carns v. City of Mansfield,* No. C80–629–A, slip op. at 5 (N.D.Ohio, 1983) (finding the Rules and Regulations of the Division of Water of the City of Mansfield to be in compliance with the due process clause).

### B.

■ In addition, "in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court limited the use of § 1983 by holding that in cases involving deprivation of property without due process, a cause of action under § 1983 is not available if there exists a state remedy that comports with procedural due process." *Braley v. City of Pontiac,* 906 F.2d 220, 225 (6th Cir.1990). This Court later held that:

> In section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of the state processes, including state damage remedies to redress the claimed wrong.

*National Communication Systems, Inc. v. Michigan Public Service Commission,* 789 F.2d 370, 372 (6th Cir.1986), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986) (quoting *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984)). Plaintiffs contend that they have no such alternative state remedy to pursue to protest the City's practices of holding them liable for their tenant's delinquencies.

As established above, the Mansfield Water Division Regulations provided plaintiffs with the right to a hearing regarding their

---

5. The hearing decisions of plaintiff Toward himself revealed that he was given hearings as a "customer" under the City's Water Division Regulations. Furthermore, the deposition testimo-

ny of the other plaintiffs establishes that each time they requested a hearing, one was provided.

objections to their water bills. Pursuant to section 2506.01 of the Ohio Revised Code,[6] plaintiffs could appeal any decision resulting from these hearings to the Court of Common Pleas. In fact, the record contains examples of disputes plaintiff Beer had with the defendants that were settled in the Richland County Court of Common Pleas. Similarly, while plaintiff Toward alleges that his requests for hearing were often denied, he never appealed these denials to the Court of Common Pleas. In addition, when assessed a delinquency, plaintiff Toward would often send a form letter to the Utilities Collections Department requesting information and a hearing, rather than complete a proper request for a hearing on a Form–6. Therefore, we find that plaintiffs' failure to plead and prove the inadequacy of their state and administrative court remedies constitutes another bar to their procedural due process claim under section 1983.[7]

### C.

■ Likewise, the plaintiffs have failed to state a claim for the denial of substantive due process. If plaintiffs' section 1983 claim is construed to be based on an alleged violation of substantive due process, then the claim must be based either on a violation of an explicit constitutional guarantee or on behavior that "shocks the conscience." *Braley*, 906 F.2d at 225.

### 1.

■ In their complaint, plaintiffs base their section 1983 claim on the following: that defendants' practices and policies (i.e., the city's demand that the plaintiffs pay delinquent water charges of former ten-

ants and owners of the plaintiffs' property and the city's concomitant refusal to extend further city services because of these delinquencies) deprived them of the due process of law and constituted a taking of their property without just compensation. In *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir.1988), owners and occupants of residences brought a section 1983 challenge to the City of Philadelphia's practice of denying water service until the delinquent service charges incurred by prior residents were paid. The plaintiffs complained that the deprivation of water service, on the ground of payment delinquencies incurred by a party other than the applicant, was constitutionally erroneous per se. The Third Circuit determined that "[t]his claim represent[ed] a substantive due process challenge, seeking nothing less than a ruling that the practice and policy of conditioning water and sewer service on the satisfaction of pre-existing charges result[s] in an unconstitutional deprivation of property regardless of the procedural safeguards installed." *Id.* at 411. The court held that an entitlement under state law to water and sewer service did not constitute a protectable property interest for purposes of substantive due process. In making its decision, the court found, in language helpful to the resolution of the case at issue, that:

> [s]ubstantive due process refers to and protects federal rights. The provision of water and sewer services, whether by a municipality or by a private utility company, is not, however, a federally protected right. . . . The legal fact that once a municipality (or, for that matter, a private utility company) establishes a utility for its citizens, a citizen's expectation of

---

**6.** This section provides in pertinent part:
> [e]very final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas. . . .

**7.** In addition, plaintiffs have several "self-help" remedies at their disposal. First, the landowners could inquire with the City's water department whether the tenant has any delinquencies before releasing his security deposit. Even if

we accept as true the fact that landlords are required to return a security deposit within thirty days, but often do not receive a tenant's final water bill for six weeks, this does not prevent the landlord from requiring the tenant to provide *documentation* that he has paid his water bill prior to the release of his security deposit. Also, landowners could opt to have the water bills put in their name and then increase the amount of rent charged to cover the cost of water usage. Moreover, a landlord can attempt to have the tenant evicted.

receiving that service rises to the level of a property interest cognizable under the Due Process Clause, ... merely brings that expectation within the compass of the Fourteenth Amendment's procedural protections, measured according to the *Mathews v. Eldridge* analysis. It does not transform the expectation into a substantive guarantee against the state in any circumstance. Therefore, we reject the claim that conditioning the receipt of water and sewer service on the satisfaction of past due charges for services rendered to the applicant's residence raises the question of a substantive due process violation.

*Id.* at 411–12. *See also Chatham v. Jackson*, 613 F.2d 73 (5th Cir.1980) (holding that the City of Atlanta's practice of terminating water service to the landlord when the tenant's bills were delinquent did not violate substantive due process); *Dunbar v. City of New York*, 251 U.S. 516, 40 S.Ct. 250, 64 L.Ed. 384 (1920) (enforcing a lien against a landlord for the tenant's delinquent water bills does not violate the landlord's substantive due process rights). Similarly, the Ohio Courts have held that municipal regulations holding landlords responsible for the delinquent water bills of their tenants does not violate the due process clause of either the state or federal constitutions. *See Burden v. Village of Waynesfield*, No. 2–85–31, slip op., 1987 WL 11177 (Ohio Ct.App.1987); *Morrical.v. Village of New Miami*, 16 Ohio App.3d 439, 476 N.E.2d 378 (1984) (holding that a municipal ordinance which imposes liability on a property owner for water services provided to a tenant on the premises does not violate the due process clause).

This Court has also adopted the position that not all property interests that create procedural due process protections necessarily create substantive due process rights. In *Charles v. Baesler*, 910 F.2d 1349 (6th Cir.1990) we stated:

Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is de-

rived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.

*Id.* at 1354. Therefore, like the Third Circuit, we reject the claim that conditioning the receipt of water service on the satisfaction of past due charges for services rendered to the applicant's residence raises the question of a substantive due process violation.

 Moreover, even if we were to find that a substantive due process right has been implicated, there has been no deprivation of that right in this case. Substantive due process would require only that the defendants show that its scheme is rationally related to the asserted legitimate governmental purpose of maintaining a financially stable municipal entity. *DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1541 (11th Cir.1986) (citing *Chatham v. Jackson*, 613 F.2d 73, 79 (5th Cir.1980)). In *Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir.1992), this Court states that:

Under this [substantive due process] analysis, an ordinance or regulation is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest. *See Williamson v. Lee Optical*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955) (stating that the constitutionality of a law will be upheld if "there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it").

The City of Mansfield's policies and practices meet this rational basis standard "because a landowner, whose property is readily subject to liens and foreclosure may be rationally presumed to be more readily held to account as the ultimate guarantor of the bills than a tenant who may freely abandon the lease, leaving behind only his outstanding debts." *DiMassimo*, 805 F.2d at 1541. To meet the rational basis standard the City's regulations need only have some reasonable basis. *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

This regulation is reasonable. The landowners receive a benefit from having water connected to their land: their apartments are more valuable because the tenants receive water. Additionally, the landlords can take measures to guarantee that they are not required to pay for the tenants' water bills out of the landlords' own pockets. For example, landlords can require a deposit as a condition of the lease which is sufficiently large to pay for past-due water bills. In addition, landlords can incorporate the cost of water service into the tenants' rents and pay the water bills out of rents collected. For these reasons, the practice of the City of Mansfield in this case is a reasonable regulation aimed at keeping the water system financially solvent. Therefore, it does not violate the substantive aspects of the Due Process Clause of the Fourteenth Amendment.

### 2.

 As to the allegation in plaintiff's complaint that defendants' practices and policies constitutes a taking of their property without just compensation, it is well-settled that in a just compensation clause case, the plaintiffs must have exhausted state remedies before resorting to a section 1983 claim. *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Four Seasons Apartment v. City of Mayfield Heights*, 775 F.2d 150 (6th Cir.1985). As the District Court found, the plaintiffs have failed to show their pursuit of an inverse condemnation proceeding in Ohio courts. Thus, the grant of summary judgment was proper.

### 3.

 Under substantive due process analysis, the validity of the defendants' actions also necessitates a determination of whether the defendants' conduct "shocks the conscience." *Rochin v. California*,

342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Braley*, this Circuit discussed the prudence of applying this standard:

> Applying the "shock the conscience" test in an area other than excessive force ... is problematic. Not only are there fewer instances in the case law, but the "shock the conscience" test is not as uniformly applied to cases where excessive force or physical brutality is not the basis of the claim. The "shock the conscience" standard, fuzzy under the best of circumstances, becomes fuzzy beyond a court's power to interpret objectively where there is a dearth of previous decisions on which to base the standard. We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity.

*Braley*, 906 F.2d at 226. Therefore, because the present case does not concern physical abuse, we are reluctant to apply the "shock the conscience" standard, *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991), and decline to do so.[8]

Consequently, because we find that defendants' practice of holding landlords liable for the delinquencies incurred by their tenants comports with the requirements of procedural due process and does not constitute a deprivation of substantive due process, defendants were entitled to summary judgment as a matter of law.

### IV.

Finally, because we find that the District Court's grant of summary judgment for the defendants was proper, we find it unnecessary to address the statute of limitations issue. However, we would note that in *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989) (en banc), this Court held, in an *en banc* decision, that the appropriate

---

**8.** *Rochin* illustrates the type of behavior that "shocks the conscience." There, police officers forcefully attempted to open Rochin's mouth to remove capsules. When their attempts proved futile, the officers took Rochin to the hospital and directed a doctor to insert an emetic solution into Rochin's stomach. This "stomach pumping" induced vomiting, whereupon the officers found two capsules of morphine. This type of intrusive behavior is vastly different from the defendants' behavior.

statute of limitations for section 1983 actions arising in Ohio is O.R.C. § 2305.10.[9]

## V.

For the aforementioned reasons, we AFFIRM.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I concur with the judgment of the court and with most of the court's opinion. I cannot agree, however, with the majority's legal analysis of substantive due process.

In part C1 of the opinion, the majority writes, "Substantive due process would require only that the defendants show that its scheme is rationally related to the asserted legitimate governmental purpose of maintaining a financially stable municipal entity." *Supra* at 1477 (citing *DiMassimo*, 805 F.2d at 1541). In my opinion, this test is erroneous because it merely examines whether the governmental scheme fulfills a legitimate governmental purpose and does not examine, as required by *Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir.1992), whether the governmental scheme fulfills a legitimate governmental purpose by an illegitimate means. Therefore, to guarantee that impermissible means are not used to achieve legitimate ends, I believe that the proper test for deciding whether a statute or regulation violates the substantive component of the Due Process Clause of the Fourteenth Amendment is simply whether the regulation is *reasonable*. As the court noted in *Planned Parenthood v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791, 2806, 120 L.Ed.2d 674, 697 (1992), "[A]djudication of substantive due process claims may call upon the Court in interpreting the Constitution to exercise that same capacity which by tradition courts always have exercised: reasoned judgment." Although *Planned Parenthood* involved a privacy concern and this case involves an economic regulation, we were first charged with examining economic regulations under the Due Process Clause by determining whether they are reasonable. *See West Coast Hotel Co. v. Parrish, et al.*, 300 U.S. 379, 391, 57 S.Ct. 578, 581, 81 L.Ed. 703 (1937) ("Liberty under the Constitution is thus necessarily subject to the restraints of due process, and [a] regulation which is *reasonable* in relation to its subject and is adopted in the interests of the community is due process.") (italics added). Between *West Coast Hotel Co.* and *Planned Parenthood*, however, the court appeared to back away from a simple test of reasonableness. *See, e.g., Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.").

I certainly understand the court's fear, evidenced in *Williamson* and numerous other cases, that federal courts may attempt to act as a superlegislature through the Due Process Clause of the Fourteenth Amendment. However, I believe that *Planned Parenthood*, which admits that courts are necessarily only bound by their best judgment when evaluating substantive due process, applies equally to economic regulations as well as other types of regulations. For that reason, I believe that the court's decision in *Planned Parenthood* requires that we return to a test of reasonableness for all substantive-due-process claims. In determining the reasonableness of a regulatory statute, we must certainly be mindful not to simply replace our judgment for the judgment of the legislature, but we cannot abrogate our duty to use a consistent standard in determining whether a particular statute violates the Due Process Clause of the Fourteenth Amendment.

Regarding the regulation in this case, I agree with the majority that this regulation

---

**9.** In *Hull v. Cuyahoga Valley Board of Education*, 926 F.2d 505 (6th Cir.), *cert. denied sub nom.*, —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991), this Court rejected the argument that in section 1983 actions Ohio's four-year statute of limitations (O.R.C. § 2305.09(D)) applies, and reaffirmed *Browning*.

is reasonable for the reasons stated by the majority on page 1478.