Max GURIK, Plaintiff–Appellant,

v.

Betty MITCHELL, John Morrison, and Jacqui Visintine, Defendants–Appellees.

No. 00–4068.

United States Court of Appeals, Sixth Circuit.

Jan. 15, 2002.

Before MOORE and COLE, Circuit Judges; and O'MEARA,\* District Judge.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Max Gurik appeals from the district court's grant of Defendant–Appellees' motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Gurik, a Corrections Officer at the Mansfield Correctional Institution, was terminated as an employee on March 11, 1998. Gurik subsequently filed a grievance challenging the termination, and, on December 3, 1998, his union settled the grievance with the Institution, reinstating Gurik as a Corrections Officer. As part of the settlement of the grievance proceeding, Gurik signed a provision waiving his right to institute any legal action on the basis of the events involved in the grievance. On January 7, 2000, Gurik filed a complaint in United States District Court for the Northern District of Ohio pursuant to 42 U.S.C. § 1983, alleging that Defendants–Appellees violated his Fifth and

Fourteenth Amendment substantive due process rights in terminating him.

In response, after filing an answer, Defendants–Appellees, employees of the Institution, filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), arguing that Gurik waived his right to sue them by signing the waiver provision of the settlement agreement. Gurik argued in his response to the motion that his waiver had not been knowing and voluntary. Defendants–Appellees then filed a second motion for judgment on the pleadings, raising the affirmative defense of qualified immunity. The district court consolidated the motions, and, in an opinion and order of July 27, 2000, granted both motions. For the following reasons, we AFFIRM the district court's grant of Defendants–Appellees' second motion for judgment on the pleadings.

## I.  BACKGROUND

Plaintiff–Appellant, Max Gurik ("Gurik"), is employed as a Corrections Officer at the Mansfield Correctional Institution ("MANCI") in Mansfield, Ohio. Defendants–Appellees are Betty Mitchell, a Warden at MANCI, John Morrison, a Major at MANCI, and Jacqui Visintine, a Labor Relations Official at MANCI. According to his complaint, on January 22, 1998, Gurik was notified by Mitchell of her intent to terminate his employment with MANCI, and on March 11, 1998, Gurik's employment at MANCI was so terminated. The reason for the termination, Gurik alleges, was pretextual: "Gurik was terminated in order to deflect blame for an inmate suicide which had occurred in November, 1997 from high level administrative officials at MANCI." Joint Appendix

---

\* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District   of Michigan, sitting by designation.

("J.A.") at 7.[1] Gurik subsequently filed a grievance challenging the termination of his employment.

On December 3, 1998, Gurik's union settled the grievance Gurik had filed with MANCI. In the settlement agreement, MANCI agreed to: (1) reinstate Gurik; (2) reduce his removal to a three-day suspension for a rule violation; (3) rescind a second rule violation charge; (4) compensate Gurik for ten pay periods;[2] (5) code the remaining time as administrative leave without pay; (6) and reinstate Gurik's health insurance upon his return to work. The union agreed to waive its rights to future arbitration or litigation on the events that formed the basis of the grievance, and it agreed to withdraw the grievance. The union and MANCI signed the agreement, and a parenthetical below the signatures provided: "This settlement is valid without the Employee's signature. The Employee's signature is only needed to obtain waiver of individual rights." J.A. at 11 (Settlement Agr.). At the bottom of the second page of the settlement agreement, an independent paragraph provided:

Employee agrees:

To waive any and all rights they may currently or subsequently possess to receive any reparation, restitution or redress for the events which formed the basis of the aforementioned grievance, including the right to resort to administrative appeal or through the institution of legal action.....

I have read the above paragraph and I am making a KNOWING and VOL-UNTARY Waiver of my rights as set forth above.

J.A. at 11. Gurik signed the provision. In his complaint, Gurik contends that:

Gurik was told on more than one occasion by MANCI representatives that his signature was necessary to settle a grievance filed by Gurik and to return Gurik to his position as a Corrections Officer at MANCI. In response to specific questions Gurik was told by MANCI (and union) representatives that by signing [the waiver provision] Gurik did not relinquish his rights to sue for violation of his civil rights.

J.A. at 7 (Compl.). On January 7, 2000, Gurik filed a complaint in United States District Court for the Northern District of Ohio alleging the violation of his Fifth and Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983. Specifically, Gurik claimed that in terminating him, Defendants–Appellees had acted "arbitrarily, maliciously and capriciously" and deprived him of "life, liberty, and property without due process of law." J.A. 7–8.

On January 26, 2000, Defendants–Appellees filed an answer to Gurik's complaint in which they raised a number of defenses, including qualified immunity. On March 20, 2000, Defendants–Appellees moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). In the motion, Defendants–Appellees argued that Gurik waived his right to sue them regarding his termination by signing the waiver provision of the grievance settlement agreement. Gurik responded to the motion on April 27,

---

1. The Joint Appendix does not contain any materials regarding the termination of Gurik's employment, except for the grievance settlement agreement. Defendants–Appellees state in their brief, however, that "Gurik's removal related to the delayed discovery of an inmate who had committed suicide in his cell." Appellees' Br. at 2.

2. The agreement provides that Gurik be compensated for eighty hours of work in each pay period. Assuming that each pay period is two weeks, Gurik was compensated for over sixty percent of the time between his termination and the settlement of the grievance (sixteen pay periods).

2000, arguing that the waiver had not been (1) supported by consideration, or (2) knowing and voluntary. Gurik attached an affidavit to this response in which he attested that after he read the waiver provision, he asked his union representative, in front of the MANCI representatives, if he retained his right to sue under the settlement agreement, and the union representative said yes. On June 8, 2000, Defendants–Appellees moved for a second time for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). In the second motion, Defendants–Appellees argued that they were immune from suit by Gurik under the doctrine of qualified immunity. Gurik responded to the second motion on July 5, 2000, arguing that Defendants–Appellees were not protected by qualified immunity because they had violated his constitutional right to substantive due process.

On July 27, 2000, the district court granted both Defendants–Appellees' motions for judgment on the pleadings. In regard to the first motion, the district court held that although the enforceability of the waiver was governed by federal law, the existence of fraud was governed by Ohio law. Applying Ohio law, the district court concluded that Gurik's reliance on his union representative had to be reasonable. As the waiver provision clearly stated that Gurik was waiving his rights to sue Defendants–Appellees in an individual capacity regarding the termination of his employment, the district court found that Gurik's alleged reliance on his union representative had not been reasonable. In addition, the district court noted that in order to assert a fraud claim under Ohio law, Gurik would have had to tender back all consideration received in the settlement agreement. In regard to the second motion, the district court held that Defendants–Appellees were protected from suit by Gurik under the doctrine of qualified immunity. Specifically, the district court

found that Gurik's complaint failed to state a constitutional violation. Gurik timely appeals.

## II. ANALYSIS

### A. Standard of Review

■■■ "The standard of review applicable to a motion for judgment on the pleadings under Fed.R.Civ.Pro. 12(c) is the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511–12 (6th Cir.2001). "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 512.

### B. Qualified Immunity

■■■ The district court granted Defendants–Appellees' second motion for judgment on the pleadings on the ground that Defendants–Appellees were protected from Gurik's suit by qualified immunity. In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts that do "not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether qualified immunity attaches, the Supreme Court has delineated a two-part, sequential analysis. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, we inquire whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?" *Id.*, 533 U.S. 194, 121 S.Ct. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* In regard to the second part of the qualified immunity analysis, the Supreme Court stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.; see also Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996).

We agree with the district court that Gurik fails to allege facts that, if true, would demonstrate that Defendants–Appellees violated his constitutional rights. In his complaint, Gurik alleged that:

> Gurik was terminated in order to deflect blame for an inmate suicide which had occurred in November, 1997 from high level administrative officials at MANCI. In terminating Gurik in order to make Gurik a scapegoat responsible for the aforementioned inmate suicide Mitchell, Morrison and Visintine acted arbitrarily, capriciously and maliciously toward Gurik.

J.A. at 7 (Compl.). Gurik does not describe any particular actions on the part of Defendants–Appellees, either in his complaint or in his briefs, that violated his constitutional rights. Instead, Gurik argues generally that Defendants–Appellees' arbitrary, capricious, and malicious behav-ior violated his Fifth and Fourteenth Amendment due process rights. In his response to Defendants–Appellees' second motion for judgment on the pleadings, Gurik specified that Defendants–Appellees' conduct violated his *substantive* due process rights, and he reiterates this argument on appeal.

We have held that "[a] substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience." *Perry v. McGinnis,* 209 F.3d 597, 609 (6th Cir. 2000). However, we have also held that a state-created right to tenured employment lacks substantive due process protection absent the infringement of some fundamental right. *See id.; Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1351 (6th Cir.1992); *McMaster v. Cabinet for Human Res.,* 824 F.2d 518, 522–23 (6th Cir. 1987).[3] In *Perry,* we concluded that because the plaintiff public employee could make a claim that his employment had been terminated in violation of his First Amendment rights, he could also make a claim that the defendant public employer had violated his substantive due process property interest in his employment. *Perry,* 209 F.3d at 609. But in *Sutton,* we concluded that because the plaintiff public employees simply argued that they had been fired without cause in violation of their contract, they could not make a claim that the defendant public employer had violated their substantive due process property interests in their employment. *Sutton,* 958 F.2d at 1350–51.

Gurik does not allege any violations of any fundamental rights. Instead, Gurik argues on appeal that this court's case law

---

**3.** The Joint Appendix does not include any information as to Gurik's employment contract, and neither Gurik nor Defendants–Appellees mention what kind of employee Gurik is in their briefs. Presumably Gurik is not an at-will employee (or the Defendants–Appellees would have so noted), but it is unlikely that he had any greater contractual right to his employment than a tenured employee.

requiring the additional allegation of a violation of a fundamental right in order to allege the violation of substantive due process in the termination of public employment goes against the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). According to Gurik, "*Lewis* shows that the right to substantive due process is a stand alone right." Appellant's Br. at 11. The Court in *Lewis* did state that § 1983 plaintiffs may allege general substantive due process violations[4] and that "[s]ince the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action." *Lewis*, 523 U.S. at 845, 118 S.Ct. 1708. However, the *Lewis* Court also stated that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846, 118 S.Ct. 1708 (internal quotations omitted). And it reiterated that "the cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* As noted above, the "shocks the conscience standard" is the very standard we relied on in *Perry*. *See also McMaster*, 824 F.2d at 522. Our requirement that terminated public employees allege violations of fundamental rights in order to allege violation of a substantive due process property interest

in their employment simply standardizes the "shocks the conscience" test for purposes of termination from public employment. In other words, a public employee's termination does not "shock the conscience" in this court if it was not based on the violation of some fundamental right. Thus, Gurik's criticism of this court's precedent based on *Lewis* is inappropriate, and Gurik must allege violation of a fundamental right in order to allege violation of his substantive due process interest in public employment.

Because Gurik did not and does not allege that his fundamental rights other than his due process rights were violated in his termination by Defendants–Appellees, he has failed sufficiently to allege a constitutional violation for the purposes of qualified immunity. Furthermore, Gurik does not allege any specific facts in support of his claim of constitutional violation—he only generally claims he was made a scapegoat. Even if the test in this court were simply whether Defendants–Appellees' conduct in terminating Gurik "shocked the conscience," Gurik would not have sufficiently alleged a constitutional violation for the purposes of qualified immunity. As the district court found, "what is alleged in the Complaint does not rise to the level of 'shocking the con-

---

4. The Court explained this to correct an interpretation of its decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), in which it held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Lewis*, 523 U.S. at 842, 118 S.Ct. 1708 (citing *Graham*, 490 U.S. at 395, 109 S.Ct. 1865). The Seventh Circuit had interpreted *Graham* "to preclude the application of principles of generalized substantive due process to a motor vehicle passenger's claims for injury re-

sulting from reckless police pursuit." *Id.* at 843, 109 S.Ct. 1865. The Court deemed this argument "unsound," *id.*, and it stated that *Graham*:

does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

*Id.* (internal quotations omitted).

science.'" J.A. at 169. In sum, we conclude that Gurik has not alleged facts on the pleadings that, if true, would demonstrate that Defendants–Appellees' conduct in terminating his employment constituted unconstitutionally arbitrary action, and, therefore, we conclude that Defendants–Appellees are immune from Gurik's suit under the doctrine of qualified immunity.

C. Waiver

■ The district court also granted Defendants–Appellees' first motion for judgment on the pleadings on the ground that Gurik waived his right to sue Defendants–Appellees regarding the termination of his employment with MANCI. As we have already concluded that Defendants–Appellees are protected from Gurik's suit by qualified immunity, we need not reach this issue. However, we do note that the question of the validity of waivers of federal causes of action is governed solely by federal law.

The district court concluded that the enforceability of the waiver was a question of federal law, but the existence of fraud in the inducement of the waiver was a question of state law. On appeal, both parties discuss the waiver issue in this framework.[5] We have held, however, that "[f]ederal law controls the validity of a release of a federal cause of action." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir.1989); *see also Town of Newton v. Rumery*, 480 U.S. 386, 392, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (applying federal common law to evaluate an agreement in which a criminal defendant released his right to file an action under

§ 1983 in exchange for the prosecutor's dismissal of pending criminal charges); *Burke v. Johnson*, 167 F.3d 276 (6th Cir. 1999) (same); *Coughlen v. Coots*, 5 F.3d 970 (6th Cir.1993) (same).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of Defendants–Appellees' second motion for judgment on the pleadings based on the affirmative defense of qualified immunity.

---

5. The district court and Defendants–Appellees cite *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1249 (6th Cir.1996), for the proposition that fraud claims are to be analyzed under state law. However, *Musson* simply states that beyond federal statutes or unique federal interests, federal courts should not create federal common law causes of action—in that case, for fraud between private parties. *Musson*, 89 F.3d at 1249–52. In this case, Gurik's fraud claim is not an independent cause of action—it is a response to the affirmative defense of waiver in a suit under 42 U.S.C. § 1983.