NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0848n.06
Filed: December 13, 2007

No. 07-3143

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICHARD HANGE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| CITY OF MANSFIELD, OHIO; LYDIA J. REID, | ) | Northern District of Ohio |
| MAYOR; MICHAEL HARTSON, FIRE CHIEF; | ) | |
| RONALD KREUTER, DIRECTOR OF PUBLIC | ) | |
| SAFETY; and F.L. FISHER, DIRECTOR OF | ) | |
| PUBLIC WORKS, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before:     BOGGS, Chief Judge; McKEAGUE, Circuit Judge; and COHN, District
Judge.[1]

**BOGGS, Chief Judge.** After fireman Richard Hange was caught sleeping on duty and then

later put the wrong kind of fuel into two fire trucks, the Fire Chief of the City of Mansfield

recommended demoting Hange from Fire Captain to Fire Fighter and suspending him for two days.

The City Safety Director approved the demotion, but then changed the two-day suspension to a

punishment of "conditional termination," meaning that if Hange were ever re-promoted to Fire

Captain, he would then be terminated. Hange fully grieved his punishments through the process

---

[1]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

afforded in the governing Collective Bargaining Agreement. Before Hange had finished grieving his punishments, the City rescinded the conditional termination and stated that Hange would simply be charged with a separate demotion for the fueling error. An arbitrator ultimately upheld Hange's demotion for sleeping on duty. Hange sued in federal district court, arguing that the conditional termination was unconstitutional because it "chilled" his right to grieve his punishments. The district court granted the City's motion for summary judgment. We affirm.

**I**

Richard Hange became a probationary fire fighter for the City of Mansfield in 1990. After one year, he became a full time Fire Fighter, and he was promoted to Fire Captain in 2001. Hange is a member of the International Association of Firefighters, Local #266 (the "Union"). The Union and the City had entered into a collective bargaining agreement effective December 1, 2002, through December 1, 2005 ("the CBA"). The CBA governed Hange's punishment and grievance rights in this case.

On the evening of January 5, 2005, the City experienced a severe ice storm, which caused numerous downed power lines. During that evening, Hange and his crew were dispatched to respond to a call of a downed power line. Several hours after Hange and his crew had arrived on the scene, Fire Captain Rippey arrived on the scene and banged on the window of Hange's truck. Rippey accused Hange of sleeping; Hange testified that he was just sitting in his seat and "might have had [his] eyes closed." Rippey ordered Hange to clear the line and move on, and Hange obeyed.

Hange's shift ended at 7:00 a.m. on January 6. He returned to the station shortly before that

and volunteered to stay beyond his regular shift. He reported to a different station and was asked to refuel the bulk tank, which is used to then fill other city vehicles, at a local fuel depot. Hange accidentally filled the tank with gasoline rather than the required diesel fuel. He then refueled two of the City's rescue trucks with the wrong kind of fuel, and realized his error when he smelled the fuel. The two trucks and the bulk tank were taken out of service until the contaminated fuel was cleaned out.

Shortly after the incidents above, Michael Hartson, the Mansfield Fire Chief, issued two notices of pre-disciplinary conference to Hange, one for each offense. The pre-disciplinary conference was held on January 20, 2005. On January 26, 2005, Fire Chief Hartson issued a Notice of Disciplinary Order finding Hange guilty of "incompetence in position of captain and neglect of duty" for sleeping on duty and recommending that he be demoted from Fire Captain to Fire Fighter. Separately, Chief Hartson found Hange guilty of mixing gasoline with diesel fuel in the bulk truck and then causing damage to two vehicles he filled from the truck. For that offense, Hartson recommended that Hange be suspended for two days without pay.

As the CBA required, the recommendations were forwarded to the City Service/Safety Director, Ronald Kreuter. On February 15, 2005, Kreuter upheld the recommendation to demote Hange for sleeping on the job. Kreuter, however, amended Chief Hartson's recommendation of suspension for the fueling error. Instead of suspension, Kreuter checked the box for termination from employment, but instead of filling in a termination date, Kreuter typed onto the form the phrase "upon his return to captain." This action was later termed a "conditional termination," but that term does not appear in the CBA and is not on the list of approved disciplinary actions included in the

CBA.[2]

Hange received notice of his punishments on February 16, 2005, and he then grieved the punishments pursuant to the CBA. On May 12, 2005, Hange filed an action alleging an unfair labor practice with the Ohio State Employment Relations Board (SERB). Hange also continued to pursue his grievance through the procedures outlined in the CBA. On June 7, 2005, Kreuter wrote to Hange that the City was rescinding Hange's "conditional termination," changing the punishment for the refueling error to demotion from Fire Captain to Fire Fighter, and merging this new demotion for the fueling error with the demotion for sleeping "because of the close proximity" of the two occurrences.

On August 9, 2005, the parties presented their claims to an arbitrator, the last step in the CBA grievance process. On October 10, 2005, the arbitrator ruled that demotion for sleeping while on duty clearing power lines was just cause sufficient to warrant the demotion. The arbitrator also ruled that under the "merger and bar" doctrine of Ohio labor law the two demotions could not be "merged"; therefore, there were "two decision[s] to demote [Hange] and they each must stand on the merits and the later cannot be merged backwards with the earlier one that already had a penalty." The arbitrator then ruled that demotion was not warranted for the fueling error. As a remedy, the arbitrator ordered the fuel tanker incident expunged from Hange's record and ordered the City to pay Hange's attorney fees "that caused the city to revise its decision" to issue a conditional termination.

---

[2]Since the City later rescinded the conditional termination before the issue reached arbitration under the CBA, the arbitrator never reached the merits of that punishment. Consequently, even though we note that a "conditional termination" punishment is not mentioned in the CBA, it is uncertain whether imposing such a punishment violates the CBA.

On November 10, 2005, the SERB issued a finding that probable cause existed to believe that a violation of Ohio labor law had occurred. Hange had alleged interference with his exercise of rights guaranteed under Ohio law, in violation of Ohio Revised Code § 4117.11(A)(1). In his unfair labor practices complaint, Hange stated that the "disciplinary action of 'converting' the two-day suspension to a 'contingent' termination is retaliatory and coercive to intimidate me from further pursuit of my rights under the [CBA] to grieve my demotion."

On February 2, 2006, Hange filed a complaint in federal court alleging violation of his right to due process. Hange sued the City of Mansfield, the Mayor, Fire Chief, Director of Public Safety, and Director of Public Works. Hange sought unspecified compensatory and punitive damages, declaratory relief holding that the conditional termination violated his due process rights, and equitable relief including re-promotion to Fire Captain and back pay.

While the complaint was pending before the district court, Hange and the City settled his SERB complaint on July 26, 2006, agreeing that the City would post a notice that SERB had found Hange's complaint had probable cause and stating that the City would comply with § 4117 of Ohio's labor laws. Hange did not receive compensation or any other consideration under the terms of the settlement.

The district court granted summary judgment for the defendants on January 17, 2007, and Hange's appeal is timely.

## II

We review a district court's grant of summary judgment *de novo*. *Alkire v. Irving*, 330 F.3d 802, 809 (6th Cir. 2003). Summary judgment is proper where there are no genuine issues of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  All facts

and inferences must be construed in the light most favorable to the party opposing the motion.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III

In his appeal to this court, Hange asserts that the conditional termination violated both

procedural and substantive due process.  In particular, he argues that procedural due process was

violated because the conditional termination "chilled" his due process rights to grieve his demotion.

His substantive due process claim is that the City's actions were arbitrary and capricious and

sufficiently shock the conscience as to be unconstitutional.  The district court ruled that, because he

had actually and fully grieved his punishments, Hange could not show he had been chilled in

violation of procedural due process.  The court also held that the City's actions did not "shock the

conscience"; therefore, the City had not violated Hange's substantive due process rights.

As an initial matter, however, we must address the fact that Hange lacks standing to seek

injunctive and declaratory relief in this case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S.

83, 95 (1998) ("Every federal appellate court has a special obligation to satisfy itself not only of its

own jurisdiction, but also that of the lower courts in a cause under review . . . .").  A plaintiff seeking

to invoke the jurisdiction of the federal courts "must satisfy the threshold requirement imposed by

Article III of the Constitution by alleging an actual case or controversy."  *City of Los Angeles v.

Lyons*, 461 U.S. 95, 101 (1983).  As we have recently stated, the "irreducible constitutional

minimum of standing contains three requirements: (1) injury in fact, (2) causation, and (3)

redressability." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (quotation marks omitted). "'Injury in fact' is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.' 'Causation' is 'a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.' 'Redressability' is 'a likelihood that the requested relief will redress the alleged injury.'" *Ibid*. (quoting *Steel Co.*, 523 U.S. at 103).

**A. Declaratory and Injunctive Relief**

In applying the first requirement of a concrete injury, the Supreme Court has held that a plaintiff's standing to seek injunctive or declaratory relief depends on the likelihood of future harm. *See Lyons*, 461 U.S. at 105. "Absent a sufficient likelihood that he will again be wronged in a similar way," a plaintiff is not entitled to injunctive relief. *Id.* at 111. Thus, *Lyons* establishes that in order for a person to have standing to seek an injunction, the individual must allege a substantial likelihood that he or she will be subjected in the future to the allegedly illegal policy. *See* Erwin Chemerinsky, Federal Jurisdiction § 2.3.3 (4th ed. 2003). Moreover, the mere subjective fear that a plaintiff will be subjected again to an allegedly illegal action is not sufficient to confer standing. *See Lyons*, 461 U.S. at 107 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."). In sum, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). *Compare Grendell v.*

*Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (holding that previous injury from court sanction was insufficient to confer standing to seek injunctive relief "where the threat of repeated injury is speculative or tenuous"), *with Fieger v. Ferry*, 471 F.3d 637, 643-44 (6th Cir. 2006) (holding that attorney had standing to pursue declaratory judgment action regarding Michigan's judicial recusal rule because he had an extensive history of litigating before the Michigan Supreme Court, was likely to have future cases that reached the court, and would again face the same recusal issue).

In addition to the injury-in-fact requirement, a plaintiff must also satisfy the causation and redressability requirements. Causation is not at issue in this case, since it is uncontested that the alleged "chill" is "fairly traceable" to the City's actions. Under the redressability requirement, a plaintiff must show "a likelihood that the requested relief will redress the alleged injury." *Nat'l Sec. Agency*, 493 F.3d at 659 (quoting *Steel Co.*, 523 U.S. at 103); *see also Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). In other words, "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) *if the plaintiff wins*." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007).

In this case, Hange lacks standing to pursue declaratory and injunctive relief. First, Hange has not demonstrated a sufficiently concrete injury-in-fact to support a claim for such relief. The conditional termination to which Hange was subjected was in place from February 15 to June 7, 2005, when the City rescinded the punishment. There is no indication that the City has a policy of issuing conditional terminations or has any intention of subjecting Hange to such a punishment again in the future. Indeed, the term "conditional" or "contingent" termination does not appear in the CBA

among the list of approved disciplinary measures. Thus, Hange has not shown "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. Because the conditional termination was rescinded, Hange cannot show "any continuing, present adverse effects" stemming from the imposition of that punishment. *O'Shea*, 414 U.S. at 496. As *Lyons* counsels, Hange's subjective fear that he may be subject to such a punishment again in the future is not sufficient to confer standing.[3] Since he cannot show a likelihood of future or continuing injury, Hange, like Lyons, lacks standing to pursue injunctive and declaratory relief.

Second, Hange's case does not meet the redressability requirement. In his complaint, Hange seeks injunctive relief, including reinstatement as a Fire Captain and back pay. This relief has nothing whatsoever to do with any injury Hange might have sustained during the four months the conditional termination was looming over him. In effect, reinstating Hange as a Fire Captain with back pay would redress the adverse effects of the arbitrator's findings that Hange was properly demoted for sleeping on duty.[4] It would not redress the injury resulting from the "chilling" effect of the conditional termination. While being reinstated as Fire Captain might provide Hange with

___

[3]Hange's original complaint stated that "equitable and injunctive relief will compensate the Plaintiff and deter the Defendants' future conduct to act in the same or similar manner toward Plaintiff." Such a statement is not sufficient to show that it is substantially likely that the Defendants will act similarly in the future. Moreover, according to the terms of the CBA, Hange's demotion for sleeping on duty will have no force or effect in any future disciplinary proceedings that occur more than twenty-four months after the demotion's effective date. In addition, Ohio Civil Service law governs promotions in the City's fire department, and although we have not investigated Ohio law, Hange does not allege that his demotion will forever bar him from being re-promoted to Fire Captain at some future date now that the conditional termination has been rescinded.

[4]Hange has not appealed the arbitrator's decision, and he has never suggested any reason that the arbitrator's decision should be overturned.

moral satisfaction that the City's allegedly illegal behavior has been rectified, such moral satisfaction is not sufficient to provide standing. *See Drutis*, 499 F.3d at 612. Stated simply, even if Hange were to win all of his requested injunctive relief, including reinstatement as a Fire Captain and back pay, that would not redress his injury. Hange's request for declaratory judgment that the conditional termination violates due process and is "unenforceable" also fails. Because the City rescinded the punishment during the grievance process, a judgment that the punishment is unenforceable would be meaningless and would not redress the "chilling" effect of the punishment while it was pending against Hange. Therefore, we hold that Hange lacks standing to request declaratory and injunctive relief in this case.

**B. Monetary Relief**

Of course, even if a plaintiff lacks standing to pursue injunctive relief because he cannot establish either likelihood of future injury or redressability, he may still have standing to pursue damages for the past injury he actually suffered. *See Lyons*, 461 U.S. at 109 (holding that even though Lyons lacked standing to pursue injunctive relief, his claim that he was illegally strangled remained to be litigated in his suit for damages). While fear is irrelevant to establishing the likelihood of future injury, such emotional damages are relevant to conferring standing in a suit for damages. *See id.* at 107 n.8. In this case, Hange alleges that the City's imposition of the conditional termination punishment "chilled" his right to grieve his demotion.

It is well-established that a claim that one has been "chilled" in asserting a constitutional right is cognizable, and we have explicitly recognized that such "chilling" may constitute an injury-in-fact.

*See G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994) ("It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact."); *see also NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter [the exercise of constitutional rights] almost as potently as the actual application of sanctions."). Indeed, a past "chill" may constitute an injury-in-fact sufficient to support standing even when the offensive policy has since been changed. *See Morrison v. Bd. of Educ. of Boyd County*, ___ F.3d ___, No. 06-5380, 2007 WL 3119480, at *6 (6th Cir. Oct. 26, 2007) (holding that a plaintiff had standing to seek nominal damages for alleged past "chilling" of his First Amendment rights). Although the Supreme Court has admonished that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), that case dealt with claims for forward-looking relief, which we have addressed above, *see supra* Part III.A. When a threat or chill "is not merely subjective, but has already been experienced," we have distinguished *Laird* and held that the past chill constitutes an injury-in-fact. *See Morrison*, 2007 WL 3119480, at *7.

In this case, Hange sought unspecified compensatory and punitive damages stemming from the alleged "chilling" of his due process right to grieve his punishments. According to Hange, the conditional termination had the effect of "chilling" his due process rights because he knew that if he successfully grieved his demotion for sleeping, he would be reinstated as a Fire Captain, the conditional termination punishment would be activated, and he would then be terminated. In his original unfair labor practices complaint before the Ohio State Employee Relations Board (SERB), Hange stated that the "disciplinary action of 'converting' the two-day suspension to a 'contingent'

termination is retaliatory and coercive to intimidate me from further pursuit of my rights under the [CBA] to grieve my demotion." The alleged "chill" in this case is sufficient to constitute an injury-in-fact. Moreover, there is no question regarding causation in this case. Finally, damages may redress such an injury. We hold, therefore, that Hange has standing to pursue his damages claim.

## IV

### A. Procedural Due Process

In his complaint, Hange claimed that the conditional termination "deprived the Plaintiff of his property interest in his employment." Hange argues that if he successfully grieved his demotion and loss of pay for sleeping and were re-promoted to Captain rank, the conditional termination as punishment for the fueling error would be triggered, and he would be terminated. Thus, he argues that his employment would then be terminated despite a successful hearing regarding his demotion. In his briefs to this court, Hange asserts a slightly different argument, that the conditional termination "had a chilling effect on the exercise of his procedural due process rights." Appellant's Br. 7, 10. Since there is no evidence of a state or city policy of imposing "conditional termination" punishments, Hange argues that he was deprived of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for his loss. Appellant's Br. 11.

The Fourteenth Amendment prohibits governmental actions which would deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "For a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or

property interest and show that such an interest was deprived without appropriate process." *Midkiff*

*v. Adams County Regional Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (citing *Board of Regents*

*v. Roth*, 408 U.S. 564, 569-70 (1972)). We apply a two-part analysis to procedural due process

claims. "First, the court must determine whether the interest at stake is a protected liberty or

property right under the Fourteenth Amendment. Only after identifying such a right do we continue

to consider whether the deprivation of that interest contravened notions of due process." *Id.* at 762-

63; *see Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir.2002). "[A] § 1983 plaintiff may prevail on

a procedural due process claim by either (1) demonstrating that he is deprived of property as a result

of established state procedure that itself violates due process rights; or (2) by proving that the

defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available

state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700,

706 (6th Cir. 1991). Hange argues that he was denied due process under the second prong.

In considering when a person has a property right in a benefit such as governmental

employment, the Supreme Court has stated, "[t]o have a property interest in a benefit, a person

clearly must have more than an abstract need or desire for it. He must have more than a unilateral

expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at

577. We have previously held that tenured public employment constitutes a property right requiring

due process protections. *See, e.g.*, *Cook v. Charter Twp. of Mt. Morris*, No. 96-1762, 1997 WL

401184, at *3 n.2 (6th Cir. July 15, 1997) (stating that it is undisputed that a full-time police officer

has a property interest in continued employment). In this case, it is clear that Hange has a property

interest in his tenured public employment with the City's Fire Department. The CBA states that a

firefighter may only be terminated for just cause, including "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination," and other specified reasons. Hange was a tenured firefighter and could only be terminated for just case. Therefore, Hange's employment as a tenured firefighter is a protected property interest under the Fourteenth Amendment.

However, Hange's argument that he was deprived of this property interest by a random and unauthorized act fails. As the district court noted, there was no actual deprivation. After all, Hange was never terminated. Rather, Hange argues that the "chilling" effect of the conditional termination is what constitutes the violation of due process. We conclude that his "chilling" claim also fails.

As an initial matter, we note that Hange grieved his discipline through all of the steps outlined in the CBA, including arbitration. The City also followed all the required procedures for notice and hearing. Notice of the charges, an explanation of the evidence, and an opportunity to respond "are all that need be afforded an employee." *Cook*, 1997 WL 401184, at *3 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). The hearing need not "definitively resolve the propriety of the discharge"; rather "[i]t merely provides the employee with the chance to clarify misunderstandings or to convince the employer that termination is unwarranted." *Ibid*. (citations, quotation marks, and ellipses omitted). In this case, Hange received multiple hearings at several stages of the grievance process.

We now address Hange's argument that he was "chilled" in his right to grieve. A claim that one has been "chilled" in the exercise of his rights is a well-recognized claim in the First Amendment area. *See, e.g.*, *Morrison*, 2007 WL 3119480. In that area, we have stated that a person seeking to prove a claim premised on a past chill must "prove that 'an adverse action was taken

against the plaintiff that would deter a person of ordinary firmness from continuing to engage in [First Amendment-protected] conduct.'" *Id.* at *10 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). This requirement introduces an objective component into the chilling claim. *See ibid.*

In this case, Hange's claim that he was chilled depends on a great deal of speculation about how his grievance would play out. In Hange's version of events, he faced termination if he chose to grieve only his demotion for sleeping on duty, won that grievance against the City, were then reinstated as a Captain, and then subjected to the conditional termination. Under this hypothetical unfolding of events, Hange feared to grieve his demotion because he knew the conditional termination loomed at the end of the process. But Hange's hypothetical theory as to how the chilling effect would have occurred does not present the only way in which events could have played. In fact, actual events *did not* play out that way. Instead, Hange understandably pursued the more rational course of challenging both his demotion and conditional termination simultaneously. Thus, even if Hange were somehow "chilled" from grieving only his demotion, he was certainly not chilled from grieving both the demotion and the conditional termination simultaneously or from grieving the conditional termination first. Ultimately, the City rescinded the conditional termination, so we do not know if the punishment would have been affirmed through all six grievance steps. We do know, however, that Hange was afforded, and pursued, the opportunity to grieve his punishments pursuant to the CBA. Although the conditional termination was not before the arbitrator, the arbitrator decided that Hange was entitled to be "made whole" and awarded Hange attorneys' fees to compensate him for his lawyer's work in getting the conditional termination rescinded. Given all

of these facts as to how events actually played out, we find that Hange's hypothetical account is insufficient to demonstrate that the conditional termination objectively chilled his right to grieve his demotion.

Hange was not terminated. He fully grieved his punishments. He did not face an objective "chilling" of his rights. Therefore, we hold that his claim that he was "chilled" in the exercise of his right to grieve, in violation of procedural due process, fails.

## B. Substantive Due Process

Hange's substantive due process claim is without merit. Substantive due process claims involve allegations of "(1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience.'" *Midkiff*, 409 F.3d at 769 (quoting *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)). Even if conscience-shocking, government action will be upheld if it is rationally related to a legitimate interest. *See ibid*. This court has stated that:

> Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental . . . .'" It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty," like personal choice in matters of marriage and family.
>
> * * *
>
> Routine state-created contractual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed."

- 16 -

*Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) (citations omitted).

Accordingly, this court has held that "the termination of public employment does not constitute a denial of substantive due process." *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006). Moreover, an employee's right to be discharged only for cause does not implicate substantive due process protections. *See Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992). However, this court has recognized that a "substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience." *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir.2000).

Hange's "routine state-created contract rights" do not fall within the protections of substantive due process. He does not allege violation of any fundamental rights. His right to enjoy the grievance procedure outlined in the CBA and his right to termination for cause are simply not so vital that "neither liberty nor justice would exist if [they] were sacrificed." Thus, Hange's conditional termination does not deny him a particular constitutional guarantee.

Hange argues that the City's action was arbitrary, but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoted in *Gurik v. Mitchell*, 26 F. App'x 500, 505 (6th Cir. 2002)). Even if it were arbitrary, the City's action does not shock the conscience because it was not "so brutal and offensive that it did not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (quoted in *Lewis*, 523 U.S. at 847). Moreover, Hange's discipline was rationally related to the government's interest in keeping skilled fire fighters in the city's employ while disciplining them when they break rules.

Accordingly, we hold that Hange's substantive due process claim also fails.

**V**

Therefore, for the reasons set out above, we AFFIRM the district court's grant of summary judgment.